## HARWOOD *v.* WENTWORTH.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
ARIZONA.

No. 756. Submitted March 9, 1896. — Decided April 13, 1896.

The act of March 21, 1895, classifying the counties of the Territory of Arizona, and fixing the compensation of the officers therein (Laws 1895, p. 68), purports on its face to be an act of that Territory, to have been approved on the 21st of March, 1895; and the original is filed with, and is in the custody of the Secretary of the Territory; is signed by the Governor as approved by him; is signed by the President of the Territorial Legislative Council as duly passed by that body; and is signed by the Speaker of the Territorial House of Representatives as duly passed by that body. *Held,* that, having been thus officially attested, and approved, and committed to the custody of the Secretary of the Territory as an act passed by the territorial legislature, that act is to be taken as having been enacted in the mode required by law, and to be unimpeachable by recitals or omissions of recitals in the journals of legislative proceedings which are not required by the fundamental law of the Territory to be so kept as to show everything done in both branches of the legislature while engaged in the consideration of bills presented for their action.

*Field* v. *Clark*, 143 U. S. 649, considered, affirmed, and applied to this case as decisive of it.

That act is not a local or special act, within the meaning of the act of Congress of July 30, 1886, c. 818, 24 Stat. 170.

THIS was a contest as to the right to exercise the functions of the office of county recorder of Cochise county, Territory of Arizona.

The defendant in error filed in the district court of the First Judicial District of that Territory, holden in Cochise county, a petition alleging that, at a general election held in Arizona on the 6th day of November, 1894, he was duly elected to the office of county recorder of Cochise county, and thereafter, having first duly qualified, entered upon the discharge of his duties as such officer; that that county, at the time of such election, was what is denominated as a first class county of the Territory; that at a regular meeting of the board of supervisors of the county he was duly elected and appointed to the office of clerk of that board, and, having

qualified, entered upon the duties of the office ; that thereafter, on or about March 21, 1895, the Legislative Assembly of Arizona, for the purpose of classifying the counties of the Territory and fixing the compensation of county officers, passed an act entitled "An act classifying the counties of the Territory, and fixing the compensation of the officers therein," which was approved March 21, 1895, by the Governor of the Territory, and went into effect thirty days after its passage, namely, on the 21st day of April, 1895 ; and that, according to the provisions of the act, Cochise county became and is a county of the third class, and its recorder clerk *ex officio* of the board of supervisors.

The plaintiff averred in his petition that as recorder he was, and had been since April 21, 1895, *ex officio* clerk of the board of supervisors, and as such entitled to the possession of the books, papers, records, seals and documents pertaining to that office, but the same were in the hands of the defendant Harwood, who, upon demand duly made, refused to deliver them to the plaintiff.

The prayer of the petition was that a writ of mandamus be issued, commanding the defendant to forthwith deliver all of said books, papers, records, seal and other documents to the plaintiff as recorder of Cochise county and *ex officio* clerk of said board of supervisors; that plaintiff be adjudged to be such recorder and clerk; and that the defendant be enjoined and restrained from exercising or performing any of the duties of that office.

The petition having been supported by the plaintiff's affidavit, an alternative mandamus was directed to be issued commanding the defendant to deliver to the plaintiff all the books, papers, etc., pertaining to the office of clerk of the board of supervisors of Cochise county, or to show cause, by a day named, why the writ should not be made final and peremptory in the premises.

The defendant Harwood averred that the act referred to in the plaintiff's petition, and referred to in the record as House bill No. 9, was not a law ; that the same did not pass the Legislative Assembly as alleged ; that that act, "as the same passed both houses of said Legislative Assembly," contained a clause

that it should not take effect and be in force before January 1, 1897; that that clause or section was stricken out, omitted and taken from the act after the same had passed both houses of the assembly, but is a part of the act; that there was also a clause that "all acts or parts of acts in conflict with this act are hereby repealed," and that that clause was also omitted and stricken out in the same way; and that "the said alleged act was not duly passed by the Legislative Assembly or by either house thereof, and that the same is not a law."

By consent of the parties the case was tried by the court upon a stipulation as to the facts, and without a jury.

It was agreed by the parties that the act of March 21, 1895, as it appears in the printed laws of Arizona for 1895, (p. 68,) is filed with and is in the custody of the Secretary of the Territory, and is signed as it appears in those laws to be signed, namely, by the Governor, the Speaker of the House, and the President of the Council.

The affidavits of A. J. Doran and J. H. Carpenter, and also the affidavits of Charles D. Reppy and Charles F. Hoff, with the exhibits attached thereto, were read in evidence, and were treated as containing a true statement of the journals and proceedings of both houses, and of the facts stated in them, subject to the objection by the plaintiff that the enrolled bill, signed by the Governor and lodged with the Secretary of the Territory, could not be attacked by any evidence.

The witness Doran stated that he was President of the Council of the Legislative Assembly of the Territory; that the session terminated March 21; that it was his custom as President to sign bills when presented to him by the chairman of the enrolling and engrossing committee of either house; that it had been the practice to so sign bills when presented, whether the Council was in session or not, though ordinarily it would be done when the Council was in session; that if signed when the Council was in session there was no formality gone through with; that the attention of the Council was not called to the fact that the President was about to sign the bill, nor was its business interrupted for the purpose of signing the bill, nor was a member who was speaking interrupted; and

that it was simply handed up to the President and he would sign his name and hand it back.

The witness Carpenter, who was Speaker of the House of Representatives of the Legislative Assembly of the Territory, testified: "That the session terminated on March 21. It was the universal custom for him as such Speaker to sign bills when presented to affiant by the chairman of the enrolling and engrossing committee of either house; that affiant so signed them without reading them or without comparing them in any manner; and that as a matter of fact he did not compare any one bill signed by him before he signed it. It was his custom, and it has been the practice, to sign bills when presented, whether the house was in session or not.. If signed when the house was in session, there was no formality gone through with. The attention of the house was not called to the fact that the Speaker was about to sign a bill, nor was the business of the house interrupted for the purpose of signing bills, nor was a member who was speaking interrupted. The facts are that a bill was simply handed up to the Speaker and he would simply sign his name and hand it back." He also stated that he was "certain that house bill No. 9, when it passed the house, contained a clause that it should go into effect January 1, 1897."

Hoff and Reppy were chief clerks, respectively, of the Council and House of Representatives of the territorial Legislative Assembly, by which the said act of March 21, 1895, .purported to have been passed. Referring to the original bill and to the numerous indorsements, or minutes thereon made by them respectively, each witness stated that the bill, as it passed the body of which he was an officer, and, therefore, as it passed both houses, contained the clause, "This act shall take effect and be in force from and after January 1, 1897;" consequently, according to their evidence, the. omission of that clause from the bill occurred after it passed both houses, and while it was in the hands of the committee on enrolment.

Upon these facts the court found the issues for the plaintiff, and its judgment was affirmed in the Supreme Court of the Territory.

### Statement of the Case.

The statutes of the United States, as well as the statutes of the Territory of Arizona, which bear more or less upon the present controversy, are, for convenience, given in the margin.[1]

---

[1] STATUTES OF UNITED STATES.

#### *Revised Statutes.*

SEC. 1841. The executive power of each Territory shall be vested in a governor, who shall hold his office for four years, and until his successor is appointed and qualified, unless sooner removed by the President. . . .

SEC. 1842. Every bill which has passed the legislative assembly of any Territory shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, but if not, he shall return it, with his objections, to that house in which it originated, and that house shall enter the objections at large on its journal, and proceed to reconsider it. If, after such reconsideration, two thirds of that house agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall be likewise reconsidered; and, if approved by two thirds of that house, it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the persons voting for or against the bill shall be entered on the journal of each house. If any bill is not returned by the governor within three days, Sundays excluded, except in Washington and Wyoming, where the term is five days, Sundays excluded, after it has been presented to him, the same shall be a law, in like manner as if he had signed it, unless the legislative assembly, by adjournment *sine die*, prevent its return, in which case it shall not be a law: *Provided*, That so much of this section as provides for making any bill passed by the legislative assembly of a Territory a law, without the approval of the governor, shall not apply to the Territories of Utah and Arizona.

SEC. 1843. There shall be appointed a secretary for each Territory, who shall reside within the Territory for which he is appointed, and shall hold his office for four years, and until his successor is appointed and qualified, unless sooner removed by the President. . . .

SEC. 1844. The secretary shall record and preserve all the laws and proceedings of the legislative assembly and all the acts and proceedings of the governor in the executive department; he shall transmit one copy of the laws and journals of the legislative assembly, within thirty days after the end of each session thereof, to the President, and two copies of the laws, within like time, to the President of the Senate and to the Speaker of the House of Representatives, for the use of Congress. He shall transmit one copy of the executive proceedings and official correspondence semi-annually, on the first day of January and July in each year, to the President. He shall prepare the acts passed by the legislative assembly for publication, and furnish a copy thereof to the public printer of the Territory within ten days after the passage of each act.

SEC. 1846. The legislative power in each Territory shall be vested in the

*Mr. William H. Barnes* for appellant.

In *Gardner* v. *Collector*, 6 Wall. 499, 508, 511, Miller, J., said

---

governor and a legislative assembly. The legislative assembly shall consist of a council and house of representatives. . . . .

SEC. 1851. The legislative power of every Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. . . .

SEC. 1861. The subordinate officers of each branch of every legislative assembly shall consist of one chief clerk, who shall receive a compensation of eight dollars per day, and of one assistant clerk, one enrolling clerk, one engrossing clerk, one sergeant-at-arms, one doorkeeper, one messenger, and one watchman, who shall each receive a compensation of five dollars per day during the sessions, and no charge for a greater number of officers and attendants, or any larger per diem, shall be allowed or paid · by the United States to any Territory.

*Act of July* 19, 1876, c. 212.

By an act of Congress, approved July 19, 1876, c. 212, 19 Stat. 91, entitled "An act relating to the approval of bills in the Territory of Arizona," (Supp. R. S. 112, c. 212,) it was provided :

" *Be it enacted, etc.*, That every bill which shall have passed the legislative council and house of representatives of the Territory of Arizona shall, before it becomes a law, be presented to the governor of the Territory ; if he approve it, he shall sign it, but if he do not approve it, he shall return it, with his objections, to the house in which it originated, who shall enter the objections at large upon their journal, and proceed to reconsider it. If after such reconsideration, two thirds of that house shall pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two thirds of that house it shall become a law, the governor's objection to the contrary notwithstanding ; but in such case, the votes of both houses shall be determined by yeas and nays, and be entered upon the journal of each house respectively. And if the governor shall not return any bill presented to him for approval, after its passage by both houses of the legislative assembly within ten days (Sundays excepted) after such presentation, the same shall become a law, in like manner as if the governor had approved it : *Provided, however*, That the assembly shall not have adjourned *sine die* during the ten days prescribed as above, in which case it shall not become a law : *And provided further*, That acts so becoming laws as aforesaid shall have the same force and effect and no other, as other laws passed by the legislature of said Territory."

STATUTES OF ARIZONA.

*Revised Statutes*, 1887.

SEC. 2940. All official acts of the governor, his approval of the laws excepted, shall be authenticated by the great seal of the Territory, which shall

of the public statute in question, in that case : " It is one of which the court takes judicial notice without proof." " We are of opinion, therefore, on principle as well as authority,

---

be kept by the secretary thereof.  SEC. 2878.  The legislative assembly shall consist of : 1.  Twenty-four members of the house of representatives ; 2. Twelve members of the council.  SEC. 2889.  The chief clerks of each house must attend each day, call the roll, read the journals and bills and superintend any matters required of them.  SEC. 2890.  The enrolling and engrossing clerk of each house must enroll and engross such bills or resolutions, as may be required of him by the house to which he is attached.  SEC. 2895. Each house shall keep a journal of its proceedings and publish the same, except such parts as may require secrecy.  The yeas and nays of the members of either house, on any question, shall be entered on the journal at the request of one fifth of the members elected.  Any member of either house may dissent from and protest against any act, proceeding or resolution which he may deem injurious to any person or the public, and have the reason of his dissent entered on the journal.  SEC. 2899.  Every bill and joint resolution, except of adjournment, passed by the legislature, shall be presented to the governor before it becomes a law.  If he approve, he shall sign it; but if not, he shall return it with his objections, to the house in which it originated, which shall enter the objections at large upon their journal.  SEC. 2901.  Every bill and joint resolution shall be read three times in each house before the final passage thereof.  No bill or joint resolution shall become a law, without the concurrence of a majority of all the members present, and constituting a quorum of each house.  On the final passage of all bills, and all joint resolutions having the effect of law, the vote shall be by ayes and nays, and entered on the journal.  SEC. 2921.  Every bill must, as soon as delivered to the governor, be endorsed as follows ; " This bill was received by the governor this — day of ——, eighteen ——." The indorsement must be signed by the private secretary of the governor. SEC. 2928.  The original acts of the legislature shall be deposited with and kept by the secretary of the Territory.  SEC. 2929.  All acts of the legislature and joint resolutions having the effect of law, shall take effect and be in force on the thirtieth day after being approved by the governor, and deposited in the office of the secretary of the Territory, unless otherwise ordered by the legislature.  SEC. 2947.  The secretary of the Territory has such powers and shall perform such duties as are prescribed by the laws of the United States, and in addition thereto it is the duty of the secretary of the Territory : — 1.  To attend at every session of the legislature for the purpose of receiving bills and resolutions thereof, and to perform such other duties as may be devolved upon him by resolution of the two houses, or either of them.  .  .  .  9.  To deliver to the printer, at the earliest day practicable after the final adjournment of each session of the legislature, copies of all laws, resolutions, (with marginal notes,) and journals, kept, passed or adopted at such session; to superintend the printing thereof, and

that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

This case is cited with approval in *Purdy* v. *People*, 4 Hill, 384; *DeBow* v. *People*, 1 Denio, 9; *Spangler* v. *Jacoby*, 14 Illinois, 297; *Young* v. *Thompson*, 14 Illinois, 380; *Speer* v. *Plank Road Co.*, 22 Penn. St. 376; *In the matter of Welman*, 20 Vermont, 653; *Supervisors* v. *Heenan*, 2 Minnesota, 330; *Fowler* v. *Peirce*, 2 California, 165.

---

have proof sheets of the same compared with the originals and corrected. 10. To cause to be published annually such laws, reports and documents, in addition to those required by the laws of the United States, as the legislature may direct. SEC. 2948. He shall secure and safely keep in his office all original acts and joint resolutions of the legislature, and cause the same to be substantially bound in suitable and convenient volumes. SEC. 2949. He is charged with the custody of : — 1. All acts and resolutions passed by the legislature. 2. The journals of the legislature. 3. All books, records, deeds, parchments, maps and papers kept or deposited in his office pursuant to law. SEC. 2950. He shall immediately after the publication of the statutes distribute volumes thereof as follows : 1. To the President of the United States one copy. 2. To the President of the United States Senate one. 3. To the Speaker of the House of Representatives of the United States, one copy. 4. To each Department of the Government at Washington, D.C., and of the government of this Territory, one copy. 5. To the Library of Congress, one copy. 6. One copy each to the governor, members of the legislature by which such laws were enacted, the delegate in Congress, the Secretary of the Territory, each judge of a court of record in the Territory, the attorney general, territorial treasurer, territorial auditor, clerk of the Supreme and District Courts, county treasurers, recorders, sheriffs, district attorneys and boards of supervisors, court or public libraries, the Attorney General of the United States and the governor of each of the States and Territories of the United States for the use of such State or Territory. SEC. 2951. He shall distribute the journals of the legislature in the manner provided by the law of the United States, and also one copy each to the persons mentioned in subdivision six of the preceding section. SEC. 2952. He shall deposit in the territorial library forty copies of the statutes and twenty copies of the journals.

It was approved in *Lapeyre* v. *United States,* 17 Wall. 191; *South Ottawa* v. *Perkins,* 94 U. S. 260; *Walnut* v. *Wade,* 103 U. S. 683; *Post* v. *Supervisors,* 105 U. S. 667; *Jones* v. *United States,* 137 U. S. 202; *In re Duncan,* 139 U. S. 449.

These are all the cases down to *Field* v. *Clark,* 143 U. S. 649. The opinion, in that case, on p. 672, lays great stress on the fact that the signing by the speaker of the house and President of the Senate was in open session, and so an official attestation by the two houses of the bill as one that has passed Congress.

Whatever weight, and the court seems to lay great weight upon it, is to be given to the signatures of the presiding officers in the presence of the houses in open session, that weight is destroyed by the fact which appears in this case, that it is not the practice in Arizona and never has been, and was not true as to this bill, and no inference of approval by the house can be drawn by the fact of signature here. The case in argument goes far to close the door.

We urge that that case is against the weight of authority and contrary to the former decisions of this court. It does not overrule *Gardner* v. *Collector,* or the former cases, and it particularly cites that case with approval.

If the case stood alone it would be authority for the startling doctrine that no matter how, whether by fraud or mistake, a law so authenticated is law, though it never passed.

The question again came before the court in *Lyons* v. *Woods,* 153 U. S. 649. The validity of a law of New Mexico was involved. The legality of the organization of the council was the question, and while the court quotes *Field* v. *Clark,* approvingly, it says: "Perhaps, however, it would be proper to extend our examination somewhat further. The question whether a seeming act of the legislature has become a law in accordance with the fundamental law is a judicial one to be tested by the courts and judges, and not a question of fact to be tried by a jury:" citing *Ottawa* v. *Perkins, Post* v. *Supervisors, Gardner* v. *Collector,* and quotes the language of the last case. It thereby reaffirms it and cites *In re Duncan* and *Jones* v. *United States.* The court then in a long opin-

ion goes into the whole case, the journals and intrinsic facts, and holds to the validity of the law.

But the court expressly declines to decide under what circumstances they would be compelled to decide that an enactment was by an illegal body. Such a question may arise. It cites with approval *Clough* v. *Curtis*, 134 U. S. 361. It seems that this last decision intentionally leaves the question an open one, to be settled by the facts of each case.

The Supreme Court of the United States is therefore on both sides of the question. The weight and number of the cases in this court uphold the view we contend for, and the court has never discarded it.

We insist that *Lyons* v. *Woods* clearly indicates that the court went too far in *Field* v. *Clark*. The court clearly intimates that cases may arise when a law must be declared void, even though authenticated.

If there ever can be such a case, the case at bar is that case. None stronger can be found, and we have no doubt in the light of the cases in this court that this law will be declared void upon the authorities of the Supreme Court of the United States alone. When we throw in the almost overwhelming weight of the authority from the other courts, we confidently say this is not a law. *People* v. *Dunn*, 80 California, 211.

This is not a question as to whether this law was read three times in each house, as required by statute, nor as to whether the law received a concurrence of a majority of a quorum; nor whether on final passage the votes were by ayes and nays, entered on the journal.

No such question as that is presented. Those are facts which the journals will disclose, and it is with reference to constitutional questions of that kind that the question arises as to which is to have the greater weight, the signed bill with the secretary or the journals of the houses as a question of evidence. It is at this point that the authorities differ. Some say the former is conclusive; others say not so, but that the court will look into the journals and proceedings to see whether the constitution has been obeyed. The question

here goes farther than that. The facts show that this bill was never before either house at all; was never passed by either house; but after a bill had passed both houses, an entirely different bill was made up by some clerk of a committee, and handed to the governor to sign. The bill handed to the governor is not an enrolled copy of the bill which passed the house, and hence the bill never passed at all. Here is the question presented, and here is the issue. I do not claim for the agreed case anything more than bringing to the actual knowledge and attention of the court facts of which the court takes judicial knowledge. If the authenticated bill is conclusive the court will look no further. If not, then here are the facts under the eyes of the court to be examined and determined.

*Mr. A. Wentworth*, defendant in error, for himself.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The statute which purports to be an act of the legislature of the Territory of Arizona, entitled " An act classifying the counties of the Territory and fixing the compensation of officers therein," and to have been approved by the Governor on the 21st day of March, 1895, not only appears in the published laws of the Territory, but is filed with and in the custody of the secretary of the Territory, and is signed, the parties agree, by the Governor, the President of the territorial Legislative Council, and the Speaker of the territorial House of Representatives.

Is it competent to show, by evidence derived from the journals of the Council and House of Representatives, as kept by their respective chief clerks, from the indorsements or minutes made by those clerks on the original bill while it was in the possession of the two branches of the legislature, and from the recollection of the officers of each body, that this act, thus in the custody of the territorial Secretary, and authenticated by the signatures of the Governor, President of the Council, and Speaker of the House of Representatives,

contained, at the time of its final passage, provisions that were omitted from it without authority of the council or the house, before it was presented to the Governor for his approval?

Upon the authority of *Field* v. *Clark*, 143 U. S. 649, 671, *et seq.*, this question must be answered in the negative. That case, in its essential features, does not differ from the one now before the court. It was claimed in that case that a certain provision or section was in the act of Congress of October 1, 1890, c. 1244, 26 Stat. 567, as it passed, but was omitted without authority from the bill or act authenticated by the signatures of the presiding officers of the two houses of Congress and approved by the President. What was said in that case is directly applicable in principle to the present case. After observing that the Constitution expressly required certain matters to be entered on the journal, and, waiving any expression of opinion as to the validity of a legislative enactment passed in disregard of that requirement, the court said: "But it is clear that, in respect to the particular mode in which, or with what fulness, shall be kept the proceedings of either house relating to matters not expressly required to be entered on the journals; whether bills, orders, resolutions, reports and amendments shall be entered at large on the journal, or only referred to and designated by their titles or by numbers; these and like matters were left to the discretion of the respective houses of Congress. Nor does any clause of that instrument, either expressly or by necessary implication, prescribe the mode in which the fact of the original passage of a bill by the House of Representatives and the Senate shall be authenticated, or preclude Congress from adopting any mode to that end which its wisdom suggests. Although the Constitution does not expressly require bills that have passed Congress to be attested by the signature of the presiding officers of the two houses, usage, the orderly conduct of legislative proceedings and the rules under which the two bodies have acted since the organization of the government, require that mode of authentication." Again: "The signing by the Speaker of the House of Representatives and by the President of the Senate, in open session, of an enrolled

·bill, is an official attestation by the two houses of such bill as one that has passed Congress. It is a declaration by the two houses, through their presiding officers, to the President, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him. And when a bill, thus attested, receives his approval and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable. As the President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State and having the official attestations of the Speaker of the House of Representatives, of the President of the Senate and of the President of the United States, carries, on its face, a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due to coequal and independent departments requires the judicial department to act upon that assurance and to accept, as having passed Congress, all bills authenticated in the manner stated, leaving the courts to determine, when the question properly arises, whether the act, so authenticated, is in conformity with the· Constitution."

It is said that, although an enrolled act properly authenticated is sufficient, nothing to the contrary appearing on its face, to show that it was passed by the territorial Legislature, it cannot possibly be — that public policy forbids — that· the judiciary should be required to accept as a statute of the Territory that which may be shown not to have been passed in the form in which it was when authenticated by the signatures of the presiding officers of the territorial Legislature, and of the Governor. This, it is contended, makes it possible for these officers to impose upon the people, as a law, something that never, in fact, received legislative sanction. Considering a similar contention in *Field* v. *Clark*, the court said : " But this possibility is too remote to be seriously considered in the pres-

ent inquiry. It suggests a deliberate conspiracy to which the presiding officers, the committees on enrolled bills and the clerks of the two houses must necessarily be parties, all acting with a common purpose to defeat an expression of the popular will in the mode prescribed by the Constitution. Judicial action based upon such a suggestion is forbidden by the respect due to a coördinate branch of the government. The evils that may result from the recognition of the principle that an enrolled act, in the custody of the Secretary of State, attested by the signatures of the presiding officers of the two houses of Congress, and the approval of the President, is conclusive evidence that it was passed by Congress, according to the forms of the Constitution, would be far less than those that would certainly result from a rule making the validity of Congressional enactments depend upon the manner in which the journals of the respective houses are kept by the subordinate officers charged with the duty of keeping them." These observations are entirely applicable to the present case.

But it may be added that, if the principle announced in *Field* v. *Clark* involves any element of danger to the public, it is competent for Congress to meet that danger by declaring under what circumstances, or by what kind of evidence, an enrolled act of Congress or of a territorial Legislature, authenticated as required by law, and in the hands of the officer or department to whose custody it is committed by statute, may be shown not to be in the form in which it was when passed by Congress or by the territorial Legislature.

It is difficult to imagine a case that would more clearly demonstrate the soundness of the rule recognized in *Field* v. *Clark* than the case now under examination. The President of the Council and the Speaker of the House of Representatives state that it was not "the custom," when an enrolled bill was presented for signature, to call the attention of their respective bodies to the fact that such bill was about to be signed; that the bill was simply handed up, when it would be signed and handed back, without formality and without interrupting legislative proceedings. The Speaker of the House of Representatives, in addition, stated that he was certain that the original

bill when it passed that body contained a clause that it should go into effect on the 1st day of January, 1897. But what made him so certain of, or how he was able to recall, that fact, is not stated.

Equally unsatisfactory, as proof of what occurred in the territorial Legislature, are the indorsements made by the chief clerks of the council and the house upon the original bill. The indorsements made by the chief clerk of the house are as follows: "Introduced by Mr. Fish January 28, 1895; read 1st time; rules suspended; read 2d time by title; 100 copies ordered printed and referred to committee on judiciary. Reported printed, 2, 5, '95. — Reported by committee amended and recommended that it do pass as amended. Referred to committee of whole with report of committee and its amendments. 2, 7, '95. — Considered in committee of whole, amended, and reported back with recommendation that it do pass as amended. 2, 15, '95. — Amendments adopted and 100 copies ordered printed. 2, 21, '95. — Reported printed and ordered engrossed and to have third reading. 2, 28, '95. — Rep'd engrossed, read 3d time, placed on final passage, and passed — ayes, 17; noes, 6; absent, Brown, sick." The indorsements made by the chief clerk of the Council were these: "Rec'd from house; read first time; rule suspended; read 2d time by title; referred to com. on ways and means, 2, 28, '95. — Rep't back that it be referred to a com. of the whole; rep'd adopted and made sp'c'l order for Tuesday, March the 12th, at 2 p.m., 3, 7, '95. Made sp'c'l order for 4 p.m. this day, 3, 16, '95. Considered in com. of whole; rep't back; progress, 3, 18, '95. Considered in committee of the whole; amendment, no. 1 and no. 2 offered and adopted. Ordered to have third reading, 3, 19, '95. Read third time; placed upon its final passage and passed council. Taken to house, 3, 20, '95." Again: "3, 20, '95; house. Rec'd by message; amended in council; amendments concurred by house; ordered enrolled. 3, 21, '95. — Rep't enr'd and in hands of governor." These indorsements, in themselves, throw no light upon the inquiry as to whether the particular clause, alleged to have been omitted, was, in fact, stricken out by the direction of the Council and House.

They show, it is true, that amendments of the original bill were made, but not what were the nature of those amendments. If it be said that certain amendments are attached to the original bill, and are attested by one of the clerks, the answer is, that other amendments may have been made that were not thus preserved. It was not required that each amendment should be entered at large on the journal.

If there be danger, under the principles announced in *Field* v. *Clark*, that the Governor and the presiding officers of the two houses of a territorial Legislature may impose upon the people an act that was never passed in the form in which it is preserved by the Secretary of the Territory, and as it appears in the published statutes, how much greater is the danger of permitting the validity of a legislative enactment to be questioned by evidence furnished by the general indorsements made by clerks upon bills previous to their final passage and enrolment — indorsements usually so expressed as not to be intelligible to any one except those who made them, and the scope and effect of which cannot in many cases be understood unless supplemented by the recollection of clerks as to what occurred in the hurry and confusion often attendant upon legislative proceedings.

We see no reason to modify the principles announced in *Field* v. *Clark*, and, therefore, hold that, having been officially attested by the presiding officers of the territorial Council and House of Representatives, having been approved by the Governor, and having been committed to the custody of the Secretary of the Territory, as an act passed by the territorial Legislature, the act of March 21, 1895, is to be taken to have been enacted in the mode required by law, and to be unimpeachable by the recitals, or omission of recitals, in the journals of legislative proceedings which are not required by the fundamental law of the Territory to be so kept as to show everything done in both branches of the legislature while engaged in the consideration of bills presented for their action.

It remains to consider whether that act is repugnant to the act of Congress of July 30, 1886, c. 818, 24 Stat. 170, entitled

"An act to prohibit the passage of local or special laws in the Territories of the United States to limit territorial indebtedness, and for other purposes."

That act declares that the legislatures of the Territories of the United States shall not pass local or special laws in any of the following, among other, enumerated cases: "Regulating county and township affairs;" "for the assessment and collection of taxes for territorial, county, township or road purposes;" "creating, increasing or decreasing fees, percentage or allowances of public officers during the term for which said officers are elected."

The territorial act, alleged to be repugnant to the act of Congress, is declared to be "for the purpose of fixing the compensation of county officers" of the Territory, and to that end all the counties of the Territory are classified according to the equalized assessed valuation of property in each county. County treasurers, district attorneys, county recorders, assessors and probate judges are to receive salaries of specified amounts, as the counties of which they are officers are in one or the other of the six classes established. In other words, the salaries of officers in each class are specified, the largest salary that each can receive being that named for a county of the first class having an equalized assessed valuation of property of three million dollars or more, and the smallest that each can receive being that named for counties of the sixth class, having an equalized assessed valuation of property of less than one million dollars. Laws of Arizona, 1895, p. 68.

We are of the opinion that the territorial act is not a local or special law within the meaning of the act of Congress. It is true that the practical effect of the former is to establish higher salaries for the particular officers named, in some counties, than for the same class of officers in other counties. But that does not make it a local or special law. The act is general in its operation; it applies to all counties in the Territory; it prescribes a rule for the stated compensation of certain public officers; no officer of the classes named is exempted from its operation; and there is such a relation

between the salaries fixed for each class of counties, and the equalized assessed valuation of property in them, respectively, as to show that the act is not local and special in any just sense, but is general in its application to the whole Territory and designed to establish a system for compensating county officers that is not intrinsically unjust, nor capable of being applied for purposes merely local or special. It is not always easy to fix a basis for the salaries of county officers, so as to compensate them fairly for their services, and yet be just to taxpayers. Certainly those named in the territorial act of 1895 ought not to receive as much compensation for services in a county having a few people, and in which a small amount of taxes is collectible, as in a populous county, in which a large amount of taxes is collectible. The services performed by such officers in the latter class of counties would necessarily be greater than those required in the former. The assessed valuation of property in a county furnishes a reasonable test of the character of the services required at the hands of county officers; at any rate, the adoption of such a test does not show that the act was designed to defeat the objects of Congress, nor that it is local or special legislation. If the territorial act is embraced by the act of Congress, and if the Territory by legislation of that kind cannot fix the salaries of county officers, and thereby displace the system of fees, percentages and allowances, it would follow that many county officers would receive compensation out of all proportion to the labor performed and the responsibility incurred by them. It seems to us that the act in question cannot be characterized as local or special any more than an act which did not create, increase or diminish fees, percentages or allowances of public officers during the term for which they were elected or appointed, but which, prospectively, fixed their compensation upon the basis of a named per cent of all the public moneys that passed through their hands. Could an act of the latter kind be regarded as local or special because, under its operation, officers in some counties would receive less than like officers would receive in other counties whose population was larger, and where busi-

ness was heavier and property of larger value? We think not. And yet we should be obliged to hold otherwise, if we approved the suggestion that the territorial act of March 21, 1895, was local or special, simply because, under its operation, county treasurers, district attorneys, county recorders, assessors and probate judges will receive larger salaries in some counties than like officers will receive in other counties.

In support of the appellant's contention numerous adjudged cases have been cited. We have examined them, but do not find that they are in conflict with the conclusions reached by us in this case.

The judgment of the Supreme Court of the Territory is

*Affirmed.*