**UNITED STATES v. GUGEL.**
**No. 9951.**

United States District Court
E. D. Kentucky, Covington Division.
Feb. 19, 1954.

898

Edwin R. Denney, U. S. Atty., Lexington, Ky., for U. S.

Charles E. Lester, Jr., Lester & Riedinger, Newport, Ky., Robert B. Halloran, Russell L. Howard, Newport, Ky., for defendant.

SWINFORD, District Judge.

This case is before the court on the defendant's Motion to Dismiss, Supplemental Motion to Dismiss, and Second Supplemental Motion to Dismiss. Since the Second Supplemental Motion to Dismiss seems to include all of the grounds covered by the two preliminary motions to dismiss, and in view of the fact that the argument and briefs of counsel for the defendant are addressed solely to the grounds set forth in the Second Supplemental Motion to Dismiss, I will discuss only the Second Supplemental Motion to Dismiss.

Of the first seven grounds urged in support of the motion to dismiss all of them with the exception of ground (4) attack the sufficiency of the language of the indictment. The indictment has been subjected to the scrutiny of the court in oral arguments heretofore had and the court has indicated and now affirms that the language of the indictment is sufficient to state a charge against the defendant and is of such language as to fully apprise him of the charge he is required to meet.

Ground (4) asserts that "the operation of a camera is not a right, privilege or immunity protected by the Fourteenth Amendment and is not a civil right". Without referring to authorities it is sufficient to say that any interference with a person's conduct and actions that are not of themselves unlawful, is the violation of a civil right. The operation of a camera is a lawful act and a citizen's privilege to take pictures, unless made specifically unlawful by statute, is such a civil right as is protected by the Constitution of the United States. In fact, the whole spirit and purpose of our United States Government is such that laws declaratory of civil rights need no written constitutional basis. If the use of a camera is carried on in such a way as to invade the right of privacy of an individual, such action could only be attacked under a lawful statute of the United States or raised by the offering of objections to the introduction of pictures so obtained, in some judicial or extrajudicial proceeding. I do not think ground (4) is sufficient to justify the court in sustaining the motion to dismiss.

Ground (8) of the Second Supplemental Motion to Dismiss attacks the validity of the indictment on the basis of the fact that the Fourteenth Amendment of the United States Constitution upon which Title 18, Section 242, of the United States Code is predicated, is not a part of the Constitution for the following reasons:

"(a) It was never constitutionally proposed to the several states in that at the time of its attempted submission for ratification or rejection (June 16, 1866) the States of Virginia, North Carolina, South Carolina, Georgia, Alabama, Mississippi, Texas, Louisiana, Florida, Tennessee and Arkansas were by the Congress of the United States deprived of their equal suffrage in the Senate in contravention of Article V of the Constitution.

"(b) When so unconstitutionally proposed to the several (37) states the Congress submitted same to all states including those mentioned in (a) hereof resulting in rejection of the proposal by those states and others and on these dates: Texas, October 13, 1866; Georgia, November 9, 1866; Florida, December 1, 1866; Alabama, December 7, 1866; North Carolina, December 13, 1866; Arkansas, December 17, 1866; South Car-

olina, December 20, 1866; Virginia, January 9, 1867; Mississippi, January 25, 1867; Louisiana, February 5, 1867; Kentucky, January 8, 1867; Delaware, February 6, 1867; Maryland, March 23, 1867; California, House and Senate divided resulting in rejection, March 4, 1867.

"(c) The rejection of the proposal to amend the Constitution by the states enumerated in (b) hereof determined the failure of the proposal notwithstanding a later attempted and subversive ratification by the states comprising the late Confederate States of America under orders of major generals of the United States Army commanding so-called military districts comprising the territory of said states. The fourteen states which rejected the proposal comprised more than one fourth of the then thirty-seven states and the proposed amendment accordingly failed of ratification."

■ It should be pointed out that the court is of serious doubt that the grounds on which this attack upon the validity of the Fourteenth Amendment is made can be properly considered on this motion and the record as it now stands. Briefs filed by counsel for the defendant are interesting but the matters to which they refer are entirely beyond and outside the record. The references to historical facts and the inferences which are drawn from these averred circumstances lack proof insofar as the case at bar is concerned. They are not of such public documentary evidence, available to the court, that the court should be asked to take judicial cognizance of them. They are matters which are charged to have occurred in the legislative and executive departments in fourteen states, eighty-seven and eighty-eight years ago. While if the court might possibly be charged with knowledge of the record entries of the State of Kentucky in which it sits, the action of the departments in Kentucky, even though true as averred, would not be sufficient to defeat the ratification or failure of ratification of the constitutional amendment. The court feels, however, that notwithstanding the utter barrenness of the record to sustain the briefs that it can pass upon the motion before it.

■ In compliance with Article V of the United States Constitution the Fourteenth Amendment was submitted to the states of the union after having been properly passed by both houses of Congress. It was proclaimed to be in force July 28, 1868. It first came before the United States Supreme Court in what are now identified as the famous Slaughterhouse Cases. In re Slaughter-House Cases, 16 Wall. 36, 21 L.Ed. 394, in 1873. It had been approved by the legislatures of a sufficient number of the states of the union. If we may assume that these legislatures were "carpet-bag" legislatures and under the military dominance of the United States, it was also true that a "carpet-bag" Legislature of Louisiana passed the legislation out of which the Slaughterhouse Cases arose. Charles Warren in his book, "The Supreme Court in United States History", states that that legislature was undoubtedly under the influence of corruption and bribery. The statute granted a monopoly of the slaughterhouse business in certain parishes of New Orleans to one corporation and deprived over one thousand persons of the right to engage in the business. This decision of the Supreme Court created the widest discussion of the bar and press that had ever been had up until that time and, for that matter, since that time, until President Truman seized the steel mills. The fact that the Supreme Court upheld the Louisiana statute as constitutional under the Fourteenth Amendment is recited in passing although that fact has no part here.

Since 1873 about eight hundred cases have been before the Supreme Court involving state statutes under the due process clause of the Fourteenth Amendment. "The Supreme Court in United States History", Volume Two, by Charles Warren. It has, of course, been under consideration in numerous cases involving federal statutes. It is of legal significance that in these many cases the validity of the amendment has been accepted as a fact by the highest court of

the land. In the Slaughterhouse Cases a legislature, of the same character as those which adopted the amendment in the southern states, enacted the statute which was under attack. The highest court accepted their legislative enactment as valid. Notwithstanding the severe attack upon the court by the bar and press throughout the land, in 1875 in Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627, the court adhered to the doctrine it had pronounced.

While it is true a narrower construction has been in later years placed upon the amendment in testing the constitutionality of state legislation, the fact that it has been recognized and acted on for more than three quarters of a century lends force to argument in favor of its validity. The age of the Fifteenth Amendment was one of the things commented on by the court in Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217, 218, 66 L.Ed. 505; when the Supreme Court was considering the validity of the Nineteenth Amendment. Mr. Justice Brandeis, speaking for the court, said:

"As the Legislatures of Tennessee and of West Virginia had power to adopt the resolutions of ratification, official notice to the Secretary, duly authenticated, that they had done so, was conclusive upon him, and, being certified to by his proclamation, is conclusive upon the courts."

 Where a legislative enactment appears on the record to conform to the mode required by law it should be, in the absence of a clear showing to the contrary, upheld by the courts. Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L. Ed. 294. Harwood v. Wentworth, 162 U.S. 547, 16 S.Ct. 890, 40 L.Ed. 1069. Neither is the time of adoption of a constitutional amendment important unless a period of limitation is fixed by the Congress in the act submitting the amendment to the states. Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385.

The following, quoted from 11 Am. Jur., page 625, succinctly states the applicable rule in the case at bar:

"The proceedings are concluded by due notice followed by proclamation that the proposed amendment has been ratified. Duly authenticated official notice to the Secretary of State that certain state legislatures, having power to adopt a resolution ratifying a proposed amendment to the Federal Constitution, have done so is conclusive upon him and, when certified to by his proclamation, is conclusive upon the courts."

I am of the opinion that the Motion to Dismiss, the Supplemental Motion to Dismiss, and the Second Supplemental Motion to Dismiss should be overruled. An order to that effect is this day entered.