The **MARYLAND PETITION COMMIT-TEE**, a membership corporation, Zelner Albritton, individually and taxpayer and grandfather, Custodian and next friend of Ellenda L. Albritton, infant, Peter T. Dodson, individually and taxpayer and father and next friend of William T. Dodson, infant, Marland W. Duvall, individually and taxpayer and father and next friend of Bryan M. Duvall, infant, William M. Braiesford, individually and taxpayer and father and next friend of Edward B. and Kathryn Ann Braiesford, infants, Alice J. Barksdale, individually and mother and next friend of Christine G. and Margo C. Barksdale, infants

v.

**Lyndon B. JOHNSON**, President of the United States of America, Hubert H. Humphrey, Vice-president of the United States of America and President of the United States Senate, John W. McCormack, Speaker of the House of Representatives, and Acting Attorney General of the United States of America, and as representatives of the United States of America.

Civ. No. 17826.

United States District Court
D. Maryland.
March 27, 1967.

George Washington Williams, Baltimore, Md., for plaintiffs.

Thomas J. Kenney, U. S. Atty., Baltimore, Md., and Lester A. Jensen, Attorney, Department of Justice, Washington, D. C., for defendants.

Thomas F. Cadwalader, Baltimore, Md., amicus curiæ.

THOMSEN, Chief Judge.

Plaintiffs seek a declaratory judgment that the Fourteenth Amendment to the Constitution of the United States is null and void and of no effect and an injunction restraining the further enforcement of any of its provisions. They contend that the Fourteenth Amendment was not proposed and adopted in accordance with Article V of the Constitution [1] in that less than two-thirds of the total membership of the House of Representatives voted to propose the amendment,[2] and less than three-fourths of the States duly ratified it.[3]

Defendants [4] have moved to dismiss the action for lack of jurisdiction over the subject matter because plaintiffs lack standing to sue and there is no justiciable controversy.

■ 1. *Standing.* The question of standing requires a determination whether plaintiffs have sufficient personal interest in obtaining the requested relief to warrant consideration of the case on the merits. Their concern with the subject matter of the litigation must be greater and more particularized than that of the public at large, to furnish a basis for such an action as this. Fairchild v. Hughes, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499 (1922); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252 (1960). In Fairchild v. Hughes, citizens of the United States, taxpayers and members of a voluntary association organized to support the Constitution sought to have the Nineteenth Amendment declared unconstitutional and to enjoin the Secretary of State from proclaiming its ratification

---

1. Article V provides in pertinent part: "The Congress, whenever two-thirds of both Houses shall deem it necessary, shall propose amendments to this Constitution, or, on the aplication of the legislatures of two-thirds of the several States, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several States, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; * * *."

2. A page from the Congressional Globe, 39th Cong., 1st Sess., 1866, p. 3149, attached to the complaint as an exhibit, shows that there were 120 yeas, 32 nays and 32 not voting. The Speaker announced that "two-thirds of both Houses having concurred in the joint resolution (H.R. No. 127) proposing an amendment to the Constitution of the United States, the joint resolution has passed." The exhibit further shows that more than four of the total membership of 184 were absent because of illness or for other reasons.

3. The complaint is not clear, but plaintiffs evidently intend to raise the same points which were raised in United States v. Gugel, E.D.Ky., 119 F.Supp. 897 (1954), and in Heintz v. Board of Education of Howard County, 213 Md. 340, 131 A.2d 869 (1957).

4. The defendants are the President of the United States, the Vice-president, the Speaker of the House of Representatives, and the Acting Attorney General, now the Attorney General, and as representatives of the United States.

and the Attorney General from taking steps to enforce it. The Court held that the plaintiffs' alleged interest in the question submitted was not such as to afford a basis for the proceeding; that the plaintiffs had only the right possessed by every citizen to require that the government be administered according to law and that the public moneys be not wasted, and that this general right did not entitle a private citizen to bring such a suit in the federal courts.

Plaintiffs in the instant case are the Maryland Petition Committee, described as "a membership corporation incorporated * * * for the purpose of protecting its members and other like-minded citizens and people in like or similar situations, circumstances and conditions in their rights and privileges under the Constitution of the United States and the State of Maryland * *," and five individuals who allege that they are citizens of the United States, taxpayers, registered voters, and parents or custodians and next friends of students attending the public schools of the State of Maryland. The wrongs alleged by plaintiffs are of the most general character:

"* * * that there have been various invasions of the rights and reserved powers of the State of Maryland and of the rights of your Petitioners, and of the other citizens and States of the Union, by the Supreme Court, the Congress and the Executive Departments of the United States, predicated upon and citing the power and authority alleged to be contained in the Fourteenth Amendment to the Constitution of the United States in support of and authorizing said and other such actions as have been taken and done, with the aforesaid result, and the *pro tanto* destruction of our much cherished Federal System of government * * *."

The complaint contains no allegation of a legally cognizable interest of these plaintiffs which is being threatened or denied, to justify the relief claimed. The fact that the individual plaintiffs are citizens, taxpayers, voters, parents, or custodians of children in public schools does not distinguish them from the public at large, since they have not alleged a denial of or a threat to any particular interest they may have in any of those roles.

At the hearing counsel argued that because of the Fourteenth Amendment the individual plaintiffs are being forced to send their white children to schools with Negro children, contrary to the laws of Maryland. If such an allegation had been included in the complaint, it would not have availed plaintiffs in this case, because any possible remedy therefor should be pursued in an action against the appropriate Board of Education, as was done in Heintz v. Board of Education of Howard County, 213 Md. 340, 131 A.2d 869 (1957), and not in such an action as this against the defendants herein.

2. *Justiciable Controversy.* On July 21, 1868, the Senate and House of Representatives of the Congress of the United States adopted and transmitted to the Department of State the following resolution adopted by the Senate and concurred in by the House:

"Whereas the legislatures of the States of Connecticut, Tennessee, New Jersey, Oregon, Vermont, West Virginia, Kansas, Missouri, Indiana, Ohio, Illinois, Minnesota, New York, Wisconsin, Pennsylvania, Rhode Island, Michigan, Nevada, New Hampshire, Massachusetts, Nebraska, Maine, Iowa, Arkansas, Florida, North Carolina, Alabama, South Carolina, and Louisiana, being three fourths and more of the several States of the Union, have ratified the fourteenth article of amendment to the Constitution of the United States, duly proposed by two thirds of each House of the Thirty-ninth Congress; therefore,

"Resolved by the Senate (the House of Representatives concurring) That said fourteenth article is hereby declared to be a part of the Constitution of the United States, and it shall be

duly promulgated as such by the Secretary of State." 15 Stat. 709, 710.

Thereupon, on July 28, 1868, as required by law, the Secretary of State caused said amendment to be published, with his certificate, specifying the States by which the amendment had been adopted and certifying "that the said amendment has become valid to all intents and purposes as a part of the Constitution of the United States." 15 Stat. 708, 711.

In Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972 (1939), a case involving the proposed Child Labor Amendment, the opinion of the Court discussed at length the history of the ratification of the Fourteenth Amendment and the proclamation and certification of the Secretary of State, set out above. The Court said:

"Thus the political departments of the Government dealt with the effect both of previous rejection and of attempted withdrawal and determined that both were ineffectual in the presence of an actual ratification. * * This decision by the political departments of the Government as to the validity of the adoption of the Fourteenth Amendment has been accepted." 307 U.S. at 449, 450, 59 S.Ct. at 980.

With respect to the question before the Court, the opinion continued:

"We think that in accordance with this historic precedent the question of the efficacy of ratifications by state legislatures, in the light of previous rejection or attempted withdrawal, should be regarded as a political question pertaining to the political departments, with the ultimate authority in the Congress in the exercise of its control over the promulgation of the adoption of the amendment." 307 U.S. at 450, 59 S.Ct. at 980.

In Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922), which involved the adoption of the Nineteenth Amendment, one of the issues was the validity of its ratification by Tennessee and West Virginia. The Court said:

" * * * The proclamation by the Secretary certified that from official documents on file in the Department of State it appeared that the proposed amendment was ratified by the legislatures of 36 states, and that it 'has become valid to all intents and purposes as a part of the Constitution of the United States.' As the Legislatures of Tennessee and of West Virginia had power to adopt the resolutions of ratification, official notice to the Secretary, duly authenticated, that they had done so, was conclusive upon him, and, being certified to by his proclamation, is conclusive upon the courts. * * *." 258 U.S. at 137, 42 S.Ct. at 218.

An attack on the validity of the adoption of the Fourteenth Amendment was made in United States v. Gugel, E.D.Ky., 119 F.Supp. 897 (1954), upon grounds similar to those relied on here. The Court rejected those contentions, citing, inter alia, Leser v. Garnett, Coleman v. Miller, and a summary of the law in 11 Am.Jur. p. 625. See also Heintz v. Board of Education of Howard County, supra.

■■ 3. *The Lateness of the Hour.* The Fourteenth Amendment has been in existence for nearly a century and has been applied by the Supreme Court in hundreds of cases. While age and usage are not absolute barriers to judicial inquiry, the courts have recognized them as persuasive indicia of validity. In Leser v. Garnett the Court noted that the Fifteenth Amendment "has been recognized and acted on for half a century". 258 U.S. at 136, 42 S.Ct. at 217. In United States v. Association of Citizens Councils, W.D.La., 187 F.Supp. 846, 848 (1960), a three judge court stated:

"Finally, the Citizens Councils contend that the Fourteenth and Fifteenth Amendments were adopted unconstitutionally. With all deference to able counsel, we find ourselves unable to agree with this contention in the light of the hundreds of cases in which the United States Supreme Court has applied these Amendments."

Similarly, in United States v. Gugel, supra, the Court found legal significance in the fact that the validity of the Four-

teenth Amendment had been recognized and acted upon by the Supreme Court for more than three-quarters of a century.

For the foregoing reasons, defendants' motion to dismiss the complaint is hereby granted.