[No. 773.  August 28, 1899.]

JOHN E. CODLIN, CHAIRMAN, AND MANUEL M. SALAZAR, Clerk of Board of County Commissioners of Colfax County, Plaintiffs in Error, v. CHARLES B. KOHLHOUSEN, CHRISTOPHER M. BLACK-WELL, ALFRED C. PRICE, TIMOTHY F. McAULIFFE, Defendants in Error.

SYLLABUS BY THE COURT.

STATUTORY CONSTRUCTION—SPECIAL LEGISLATION—CHAPS. 6, 33, SESSION LAWS 1897—VALIDITY—MANDAMUS.—1.  Whenever an act of the legislature can be so construed and applied as to avoid a conflict with the laws of congress and give it the force of law, such construction should be adopted by the court.

2.  It is not necessary that the law should operate upon all counties and cities of the territory to be constitutional.  If the law is general and uniform throughout the territory, operating upon all of a certain necessary or reasonable class, or upon all who are brought within the relations and circumstances provided in the act and such law has provision for future as well as present operation, it is not obnoxious to the limitations against special and local legislation of the act of congress, known as the Springer Act.

3.  Chapters 6 and 33, Session Laws of 1897, are not local or special legislation within the meaning of the act of congress approved July 30, 1886, chapter 818, 24 statute 170, and mandamus lies to compel a board of county commissioners to perform a duty required by chapters 6 and 33.

*Error*, from a peremptory writ of mandamus issued and obeyed by plaintiffs in error, to the Fourth Judicial District Court, Colfax county.  Affirmed.

The facts are stated in the opinion of the court.

R. E. TWITCHELL and W. C. REID for plaintiffs in error.

Chapters 6, 33, of the Laws of 1897, under which the county seat of Colfax county was removed from the town of Springer to the town of Raton, and bonds issued for the erec-

tion of a courthouse and jail, are local and special laws, and therefore in conflict with the act of congress of July 30, 1886, and void.    State ex rel. Columbus v. Mitchell, 31 Ohio St. 592; State v. Herman, 75 Mo. 340; Devine v. County Comm'rs, 84 Ill. 591; State v. Hammer, 42 N. J. Law 435; Anderson v. City of Thornton, Id. 487; Wheeler v. Philadelphia, 27 Pa. St. 338; Commonwealth v. Patton, 88 Id. 258; Morrison v. Bachert, 112 Id. 322; Topeka v. Gillette, 5 Am. and Eng. Corp. Cas. 290; Mode v. Beasley, 42 N. E. Rep. 728; Earle v. Board of Education, 55 Cal. 489.

A. A. JONES for defendants in error.

The law is not local or special because it does not apply to the removal of all county seats.    Edmunds v. Herbrandson, 50 N. W. Rep. 973; Fellows v. Walker, 39 Fed. Rep. 651; State v. City of Kansas City, 31 Pac. Rep. 1102.    See, also, as to basis of classification, Harwood v. Wentworth, 162 U. S. 547; Commissioners v. McMullin, 25 N. E. Rep. 677; State v. Spaulde, 34 N. W. Rep. 165.

The legislature is the sole judge of what reasonable and natural conditions and circumstances shall form the basis of classification.    State v. Donovan, 15 Pac. Rep. (Nev.) 785; Cummings v. City of Chicago, 33 N. E. Rep. 855; State v. City of Kansas City, supra, 1102; Lloyd v. Smith, 35 Atl. Rep. (Pa.) 200.

McFIE, J.—After hearing upon an order to show cause, a peremptory writ of mandamus was issued and obeyed by the plaintiff in error, and the cause is in this court upon a writ of error.

The plaintiffs in error rely for reversal upon the sole ground that both chapters six and thirty-three, of the Laws of 1897, under and by virtue of which the county seat of Colfax county was removed from the town of Springer to the town of Raton, and bonds were issued for the erection of a courthouse and jail, are invalid and void in that they are local and

STATUTORY construction: special legislation.

special laws and therefore in conflict with the act of congress of July 30, 1886, chapter 818, 24 statutes 170, which is so far as applicable to this case, as follows:

"Be it enacted, etc., that the legislatures of the territories of the United States, now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases, that is to say: Locating or changing county seats; regulating county and township affairs.

"In all other cases where a general law can be made applicable no special law shall be enacted in any of the territories of the United States by the territorial legislatures thereof."

There is no question of pleading or practice involved in the case as presented by counsel in their briefs, and this court decides the case upon the one question argued in the briefs, that chapters 6 and 33, Laws of 1897, are local and special laws and void because in conflict with the act of congress above set forth and referred to.

The legislative assembly of New Mexico has power to enact laws upon all rightful subjects of legislation, provided such laws are not in conflict with the constitution or laws of the United States. Congress has the power to modify or nullify laws enacted by the legislative assembly of a territory, but if congress fails or refuses to act, such laws remain in force so far as congressional action is concerned. There was no action by congress as to these laws.

The location or removal of county seats; the regulation of county affairs, and the classification of counties are undoubtedly rightful subjects of legislation, and territorial legislatures have power to enact laws upon such subjects. There is, indeed, a presumption in favor of legislative action which is fully pointed out by the supreme court of Pennsylvania in the case of Lloyd v. Smith, 35 Atl. Rep. 200.

"The presumption is always in favor of the legislative command and it must prevail unless clearly transgressing the constitutional prohibition."

The laws which the plaintiffs in error seek to have this court declare void are entitled to this favorable presumption and should stand unless it is overcome.

An examination of the laws in question also shows that upon their face they are general laws. Section 1, chapter 6, begins as follows: "Whenever the citizens of any county in this territory shall present a petition to the board of county commissioners, etc.," and section 1, chapter 33, begins as follows: "Hereafter, when the county seat of any county in this territory shall be established at any incorporated city, etc."

So that these laws do not appear to be subject to the attack made upon them either in their titles or in the body of the acts; but counsel for plaintiffs in error, in his brief, says:

"It is true that the statute in question does not specifically name the county of Colfax, but the conditions and provisions in section 1 thereof are of that peculiar kind that they exclude every other county in the territory from taking advantage of the provisions of the statute otherwise, and as a matter of fact, prevent the removal of any county seat in the entire territory, except that of the county of Colfax. * * * * * It applies, and can only be made to apply to the county of Colfax."

It is clear that section 1 of chapter 6, and the first proviso thereto, is not subject to the above criticism, but the oral argument developed the fact that the conditions which counsel complained of were contained in the last proviso to section 1, as follows:

"That the city, town or village named in the petition shall be at least twenty miles distant from, and of a population larger than the then county seat of said county; and that no proposition to remove a county seat from a city, town or village situated on a railroad to one not so situated shall be entertained or voted upon."

Before considering the terms of this proviso, it is well to observe that section 1, together with its provisos, and in fact the entire chapter 6 is free from the vice which has caused the

courts of the United States, and many of the states and terri-
tories, to overthrow legislation as local and special.

Counsel for plaintiffs in error has cited many of the cases
wherein legislative enactments have been declared unconsti-
tutional and void because they were held to be special or local
laws, but an examination of those cases will disclose a marked
distinction between the laws thus involved and held to be spe-
cial, and those involved in this case.

In State ex rel. Columbus v. Mitchell, 31 Ohio St. 592,
the statute held to be unconstitutional provided that it should
be applicable to "cities of the second class, having a population
of over thirty-one thousand at the last federal census." The
court in declaring that statute special legislation, says:

"Columbus is the only city in the state having the popu-
lation named, at the last federal census, and the act therefore
applies alone to that city, and never can apply to any other."

This act, as will be seen, related only to the conditions
existing at the last federal census and had no future operation,
and it is clear from the language of the court that the fact that
the law had no future operation was the reason for its over-
throw. The intent to legislate for the single city of Colum-
bus was established beyond question, in the failure of the law
to provide for its future operation upon cities which might
thereafter have a population of thirty-one thousand.

That the court did not declare the law unconstitutional
on the ground that it operated upon but one city, but because
the law had not provisions for future application to cities sim-
ilarly situated, is made clear by the case of Fellows v. Walker,
39 Fed. Rep. 651.

The circuit court for the Northern District of Ohio says:
"The constitutionality of the act is denied because it is said to
be a special act conferring corporate powers, that it is special
because the city of Toledo is the only city of the third grade
of the first-class in the state of Ohio, and the only city to which
this act is or can be applicable. But this objection can not be
sustained. It is well settled by authority in Ohio that the clas-
sification of municipal corporations is valid and that legisla-

tion which is applicable to a class is general, although there may be at that time but one city in that class."

In State v. Herman, 75 Mo. 340, the act under consideration applied only to cities "having a population of one hundred thousand or more." The court expressly referred to the fact that the act was limited to then existing conditions and held the act to be special legislation because it did not permit other cities which might thereafter have a population of one hundred thousand to have the benefit of its provisions.

The statute of Illinois declared special legislation, by the supreme court of Illinois, in the case of Devine v. Board of County Commissioners of Cook County, 84 Ill. 591, was limited to cities of more than one hundred thousand population, being applicable only to the city of Chicago; it was also limited in duration to six years; it provided for issuing bonds for the erecting of a courthouse on the site heretofore used, and one of the conditions for taking advantage of the act was "recent destruction by fire of public buildings." The court in that case found that the legislation was limited in several ways to the single city of Chicago and county of Cook. No other city or county in the state had the requisite population, and the six year limit fixed made it unreasonable to believe that any other city would obtain the necessary population within the six years so as to secure the benefits of the act; and when the act further required the courthouse to be erected on the site heretofore used for the reason that the building had recently been destroyed by fire—necessarily meaning the great Chicago fire—the court properly said that the act by its very terms precludes it from having any application to any county except the county of Cook. The intent of this law, following as it did, the great Chicago fire, was too plain for discussion and the court was compelled to hold the law to be local and special legislation.

In State v. Hammer, 42 N. J. Law 435, the law under consideration was limited as follows: "That in any city of this state where a board of assessment and revision of taxes now exists."

The court found that such boards existed, at the time the act was passed, in but two cities of the state, Newark and Elizabeth, and the law was held to be local or special legislation because by its terms the law "can and must ever apply -to Elizabeth and Newark and no other cities." The court, however, distinctly say in that case, that to be a general law it is not necessary that it shall apply to all cities and towns.

So in Anderson v. The City of Thornton, 42 N. J. Law 487, the law applied to cities "Having a population of not less than 25,000 inhabitants." Thus it was limited in its operation to present conditions and had no provisions for future application.

The supreme court of Pennsylvania sustained the act of 1874, as its operation was made applicable in the future as well as the present. Wheeler v. Philadelphia, 27 Pa. St. 338. But the same court held the act of 1878 to be special as it made no provision for future application. Commonwealth v. Patton, 88 Pa. St. 258.

In Morrison v. Bachert, 112 Pa. St. 322, the court says: "An act excluding perpetually from its operation counties containing more than one hundred and fifty thousand or less than ten thousand is a local law."

In City of Topeka v. Gillette, 5 Am. & Eng. Corp. Cases 290, the vice of the law was, that it fixed the unreasonably short limitation of fifty-eight days, and arbitrarily excluded from its operation "all cities not obtaining the benefit of the act within fifty-eight days after its passage." But in State v. The City of Kansas City, 31 Pac. Rep. 1102 the supreme court said:

"It is not necessary that the law should operate upon all cities of the state to be constitutional. If it is general and uniform throughout the state, operating upon all of a certain class, or upon all who are brought within the relations and circumstances provided in the act it is not obnoxious to the limitations against special legislation."

In State v. Spaulde, 34 N. W. Rep. 165, the supreme court

of Minnesota upheld a statute against alleged special legislation, and in so doing said:

"A law, to be general, need not operate alike upon all the inhabitants of the states, or all the cities, or all the villages, in the state. To require that would be utterly impracticable. A law is general which operates alike upon all the inhabitants of all the cities, or all the villages, or other subjects of a class of such subjects of legislation. That for the purpose of legislation it may be necessary to make, and that the legislature may make, such classification, is undoubted the only practical limitation to this power is that the classification shall be based upon some natural reason; some reason suggested by necessity; by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them—and shall not be merely arbitrary, with no apparent reason except a desire to evade, under the forms of a general law, the constitutional inhibition of special legislation."

From these decisions it is evident that the grounds upon which the laws under consideration were declared to be special or local was, that there was no provisions for their future operation, or if there was, it was of an unreasonably short duration, as in the case from Kansas it was fifty-eight days, and in the case from Illinois it was six years.

A law may be made to apply to conditions existing at the time the law is enacted, but it must also apply to similar conditions in the future. Laws usually take effect from and after their passage, and, therefore, their future operation is a very essential characteristic.

The limitations in the laws declared to be void by the courts, in the cases above cited, were purely arbitrary and without any reasonable foundation. In each case they served to prevent the future general operation of the laws and thus made those laws special, whether they were general in form or not.

From the cases of State v. Kansas City and State v. Spaulde, above referred to, it is clear that to be a general law it

is not necessary that it shall operate upon all of the counties of cities and towns of the state or territory. Almost every state and territory has classified its counties and cities, by population, wealth or otherwise, and the courts have sustained these classifications wherever they are not purely arbitrary and without reason for such discrimination. Such classification may be made by direct enactment or may be based upon circumstances and conditions which are natural, reasonable and germane to the subject-matter of the legislative act.

The counties, cities and towns of this territory have been classified by law for different purposes, and these laws are valid and are not special legislation although under them the same officer draws a larger salary, for similar services, in one county, than in another. There is a reason for this difference in the salaries, and this reason justifies the law.

A case involving such a classification and difference in salaries was taken to the supreme court of the United States from the territory of Arizona, and in deciding the case the court said:

"We are of the opinion that the territorial act is not a local or special law, within the meaning of the act of congress. It is true that the practical effect of the former is to establish higher salaries for the particular officers named in some counties than for the same class of officers in other counties, but that does not make it a local or special law." Harwood v. Wentworth, 162 U. S. 547.

In Commissioners v. McMullin, 25 N. E. Rep. 677, which was a case which applied to but one city in the state, at the time of the passage of the act, but there was provision for future operation, the court said:

"If it be true, as suggested, that the act is applicable to the conditions existing in a single city in the state, that fact does not necessarily render it local or special legislation. It is general in its terms, and applies to all cities of the state which at the time of its passage has parks under the control of park commissioners, or that might at any time thereafter so have parks. If, because only a single city has such parks, an act

general in its application to all cities, would be local or special legislation no valid act could be passed affecting such existing parks."

On the other hand, classifications and discriminations are uniformly overthrown by the courts where they are purely arbitrary and without substantial reason. As an illustration of such arbitrary classification, take the case of Davis v. Clark, 106 Pa. St. 377, wherein the statute under consideration excluded all counties having a population of two hundred thousand from the operation of the mechanics' lien law. It is apparent that there is no valid reason why the mechanics' lien law should not be in force throughout the state.

And in Scranton v. Silkman, the act allowed the appeal from assessment of taxes in counties of less than five hundred thousand population. The terms of this act made it purely arbitrary, as such a law should be available to every citizen of the state.

It will be seen, therefore, that while the courts will not uphold laws which by unreasonable and arbitrary limitations disclose an intent on the part of the legislature to prevent the general operation of the law; they will uphold as general laws classifications and discriminations based on various circumstances and conditions which are just, reasonable and germane to the subject-matter of the legislative act.

The supreme court of Pennsylvania, in the case of Lloyd v. Smith, 35 Atl. Rep. 200, says:

"Classification of counties is therefore as permissible as classification of cities, and the legislature may determine what differences in situation, circumstances and needs call for a difference of class, subject to the supervision of the courts as the final interpreters of the constitution, to see that it is actually classification, and not special legislation under that guise. The presumption is always in favor of the legislative command, and it must prevail, unless clearly transgressing the constitutional prohibition."

In State v. Kansas City, 31 Pac. Rep. 1102, the court says: "It belongs to the legislature to make the classifica-

tion, and, while it can not so classify them as to make the law special in its application and results, yet many classes may properly be made. It need not be restricted to the population of municipalities, but it would seem that it might be based on the conduct or condition of the people resident therein."

In the light of these decisions we will not examine the acts involved in this case. We have already observed that the acts purport to be of general application and therefore not in conflict with the act of congress unless conditions imposed show that the legislative intent was to limit the operation of the acts to the county of Colfax alone, and that by the terms of the acts they could have no application to any other counties of the territory similarly situated.

The conditions in chapter 6, relied upon by plaintiff in error, are the following:

"Provided further, that the city, town or village named in the petition shall be at least twenty miles distant and of a larger population than the then county seat of said county; and that no proposition to remove a county seat from a city, town or village, situated on a railroad to one not so situated, shall be entertained or voted upon."

On page 10 of the brief of counsel for plaintiff in error, the says: "No express words that could have been used by the legislature could limit the operation of this statute to the county of Colfax more absolutely and definitely than those employed."

And on page 13 counsel says: "It selects the city of Raton, in the county of Colfax, as the only place in New Mexico to which a county seat may be removed."

We are unable to agree with the conclusion of the counsel. This court takes judicial notice of the cities and towns of the territory, together with their location and population. The court knows, therefore, that at the time chapter 6, which provides for the removal of county seats, was enacted there were at least three counties which were subject to its operation, namely, Colfax, Lincoln, Guadaloupe. Raton was a larger town than Springer in Colfax, and more than twenty miles

distant. White Oaks was a larger town than Lincoln, in Lincoln, and more than twenty miles distant, and Anton Chico was a larger town than Puerto de Luna, in Guadalupe, and more than twenty miles distant, so that counsel's contention that the act could not apply to any other than the city of Raton, and the county of Colfax, can not be sustained.

It does not appear, therefore, that the legislature intended to limit the operation of the act to Colfax county, not that such is the effect; on the contrary, the act at the time of its passage applied to several counties, and had unlimited future application to all counties similarly situated.

It is not to be supposed that the act of congress of July 30, 1886, was intended to prohibit the passage of all territorial laws on the subject of the removal of the county seats which were not so framed that every county seat in every county could be removed under its provisions as soon as the law was passed, for if such was the intention of congress or effect of the act, it would be tantamount to prohibition of all future legislation on the subject.

Laws for the removal of county seats are almost necessarily conditional and made applicable to all counties similarly situated. It is a matter of common knowledge that in many of the states laws have been enacted prohibiting a vote for the removal of county seats oftener than once in ten years, and such laws are sustained by the courts, although there is a constitutional provision prohibiting special or local legislation. There is a valid reason for such a provision. It is common knowledge that the removal of county seats is a fruitful source of trouble and even bloodshed in the cities and towns involved in such contests, and for that reason ease and frequency of such removals are and should be discouraged by conditional legislation; and, where such laws provide for the removal of county seats upon conditions reasonable and for the best interests of the people, if they provide for the future operation of the law upon all counties similarly situated, they are not in conflict with the above act of congress, though but few

counties may have been required conditions at the time the act is passed.

The conditions upon which county seats may be removed, under chapter 6, are:

"That the city, town or village named in the petition shall be at least twenty miles distant and of a larger population than the then county seat of said county."

These conditions are entirely just and reasonable in the light of what has been said, but, further, the legislature is presumed to have knowledge of the conditions existing in the territory; also of its counties, cities, towns and villages, and of their location and population. It must be presumed to have known that most of the cities and towns of the territory are comparatively small, and in some instances unsuitable for the accommodation of the court; that in many instances, especially along the railroads, new cities and towns have been established within one or two miles of each other. . Knowing these facts and conditions to exist, it is reasonable to believe that the legislature in these enactments intended that. county seats should be established in the larger cities where the courts and the people attending them could have suitable accommodations and that hereafter county seats shall not be located in smaller cities and towns than those in which they now are. It is also reasonable to believe that the legislature intended, in fixing the twenty mile limit, to prevent cities and towns situated within a few miles of each other from engaging in those injurious contests for the supremacy for the location. of the county seat, based upon the population only. The wisdom of these conditions is apparent, and it is within the power of the legislature to make them.

In State v. Kansas City, 31 Pac. Rep. 1101, an act of the legislature providing for the consolidation of cities of a certain class and fixing three-fourths of a mile apart, and not less than fifteen thousand inhabitants, as conditions to consolidation, was sustained by the court against alleged special legislation.

Another condition is as follows: "That no proposition

to remove a county seat from a city, town or village situated on a railroad, to one not so situated, etc."

In inserting this condition the legislature intended to prevent all counties, after the passage of the act, from removing their county seats from towns situated on a railroad to those not upon a railroad. Accessibility should always be considered in locating county seats, as business can be transacted at county seats situated upon a railroad more expeditiously and economically. This condition is both germane and reasonable, and a similar provision has been considered with approval in the case of Edmunds v. Herbrandson, 50 N. W. 973.

The last provision for our consideration is that which provides the county seats shall not be removed, unless the parties seeking the removal to some other city or town shall provide, free of cost to the county, a suitable site for the courthouse and jail, and also contribute at least $8,000 towards the expense of erecting a courthouse and jail. It is a matter of common knowledge that the removal of a county seat is a matter of larger expense to the county, mainly caused by the erection of a new courthouse and jail, and we see nothing unreasonable or improper in a legislative provision enabling counties to secure aid in the erection of new buildings from the city, town or persons benefited by the removal of the county seat. It is a matter of common notoriety that the location of public enterprises of corporations and individuals are secured in this way by the different cities and towns throughout the county, and we see no valid reason for denying this privilege to counties in case of removal of county seats, especially when it is remembered that such removals should not be facilitated.

All of these provisions apply to all future removals of county seats, and we are unable to see how any of them confine the operation of the law to Colfax county or make this law obnoxious to the act of congress. These provisos are simply conditions precedent to all future removals, and are clearly within the power of the legislature to enact.

In Cummings v. City of Chicago, 33 N. E. 855, the court says:

"The legislature, for reasons appearing satisfactory to it, saw fit not to apply to the smaller assessments in the larger cities of the state the somewhat cumbersome mode of collecting the same provided for in the act under consideration. Whether this was wise or unwise is a question for legislative consideration. Reasons, for the distinction, existing in the legislative contemplation, it was lawful for the legislature to thus discriminate, if enacted into a general law, uniform in its application to all cities of the state similarly situated."

Passing now to the consideration of chapter 33, we find that the portion designated by counsel for plaintiff in error as special legislation, is the following paragraph of section 1:

"Hereafter, when the county seat of any county in this territory shall be established at any incorporated city and the council of such city shall desire to join with said county in the erection of a public building to be used as a courthouse and jail, as well as for city purposes."

It must be borne in mind that this is not an act providing for the removal of county seats, but is an act authorizing incorporated cities, in case they desire to do so, to join with the county and issue bonds to aid the erection and use of the public buildings by both the county and the city in all cases where a county seat shall be removed to such city.

Counsel for plaintiffs in error admit that cities may be classified and that the courts uphold such classification where the terms are not purely arbitrary but are essential to the objects of the law, but insist that the classification made by this law can not be sustained because the law does not apply to all the incorporated cities of the territory.

It is true that the law did not have a uniform application to all of the incorporated cities at the time of its enactment, and it is true that the law was not applicable to Santa Fe, Socorro and Silver City because these cities were incorporated and were county seats of their respective counties when the law was passed, but it does not follow that because the law

is not uniform of operation upon all such cities that it is not a general law.

The doctrine announced by the supreme court of New Jersey, in the case of State v. Hammer, seems to have been sustained by the courts generally. In that case the court said:

"But it has further been considered that these classes also may be subdivided by the legislature so that a law will be general which yet touches only a subdivision. * * * Thus, a statute giving to all cities bordering upon tide water the power to construct docks or to establish quarantine regulations, or providing that in all towns having volunteer fire departments the members of the department should choose a commission to govern them, would, I presume, be valid. These groups would, according to the principle laid down, be naturally classified for legislation touching their peculiar qualities, and such legislation, though affecting them alone, would be general. * * * There must be a substantial distinction having reference to the subject-matter of the proposed legislation, between the places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree at least, account for or justify the restriction of the legislation."

Now, in the act under consideration the "marks of distinction" between the cities included and excluded are patent. No one can doubt the economy and beneficial character of the legislation proposed by the act. Is it therefore reasonable to believe that the act was intended to make it impossible for any other cities or counties to have the benefit of this wise legislation simply because there was one or two more counties to which it was wholly inapplicable and undesirable? We think not. The legislature is charged with a knowledge of the facts that the county seats of the counties of Santa Fe, Socorro and Grant had been for many years established in incorporated cities, and had already erected courthouse and jails, without cooperation as provided in chapter 33; that for this reason the proposed legislation could be of no benefit to such cities or

counties, and on the contrary, its application to them would be without justification. The intent of the legislature undoubtedly was to apply the law to all cities and counties similarly situated, having a present application to all cities within the provisions of the act and a future application to all cities in the territory attaining similar conditions. The necessity for the discrimination made in this act is apparent and fully justifies its enactment as general legislation which it purports to be.

Taking the view that the cities of Santa Fe, Socorro and Silver City, are excluded from the operation of the act, the exclusion arises from circumstances rather than from the terms of the act.

"It is one thing to assert that all except a single object will be forever kept from the class by circumstances, and another and entirely different thing to attempt to exclude all others by the terms of the law." Edmunds v. Herbrandson, 50 N. W. Rep. 973.

The word "hereafter" is so used as to make the intent of the legislature in using it somewhat doubtful. It is contended by plaintiff in error that it relates to the establishment of county seats, while the defendant in error insists that the word "hereafter" relates to power to issue bonds and that a proper and reasonable construction of the act would be, that hereafter the city council of any incorporated city may issue bonds when the county seat of any county in this territory shall be established, etc.

Now, when it is considered that the purpose of the act is not the removal of county seats, but is for the purpose of authorizing the issuance of bonds under certain circumstances, and for certain purposes defined in the act, it would seem that the latter view is more in accord with the purpose of the legislature than the view taken by the plaintiffs in error. To determine the intent of the legislature from a strict grammatical construction of the language of the act would be of doubtful propriety in this territory; therefore, such construc-

tion should be adopted as will best carry into effect and sustain the law.

"Whenever an act of the legislature can be so construed and applied as to avoid a conflict with the constitution, and give it the force of law, such construction should be adopted by the court." Peel Splint Coal Co. v. State, 15 S. E. Rep. (W. Va.) 1000; Owen v. Sioux City, 59 N. W. Rep. 5.

We are of the opinion, that, whether these three cities were, or were not, excluded from the operation of the act is not material; the acts are not special or local CHAPTERS 6, 33, legislation, within the meaning of the act of laws 1897: va-lidity: mandamus. congress of July 30, 1886. It follows from this conclusion that the court below committed no error in awarding the peremptory writ of mandamus upon the hearing, and the command of the writ having been obeyed, and the bonds involved issued, the judgment of the court below should not be disturbed.

The judgment of the court below is affirmed, with costs.

Mills, C. J., Parker and Crumpacker, JJ., concur; Leland, J. not sitting.