MARTIN v. HOUSE *et al.*

(*Circuit Court, E. D. Arkansas.* June, 1888.)

UNITED STATES—PUBLIC LANDS—JURISDICTION.

 Where land has been sold to the United States government, and jurisdiction over the same has been ceded to it by the state legislature, reserving the right to serve personal process thereon, no process issuing out of a state court upon a judgment lien to which the land was subject at the time of sale can affect the title thereto.

At Law. Action to recover land.

*N. M. & G. B. Rose* and *J. W. Martin*, for plaintiff.

*J. W. House*, for defendants.

BREWER, J. This is an action brought to recover possession of the south half of block 98, in the city of Little Rock, the same being the ground on which is situated the post-office building. Under the practice which obtains in this state, exceptions were filed to the deeds and other documentary evidence exhibited by plaintiff, and relied on as evidences of title. One matter only shall I notice, for that is fatal to plaintiff's right to recover.

On the 15th of May, 1874, one M. W. Benjamin, who had theretofore been the owner of the property, made a final conveyance to the United States. On the 4th of April, 1874, J. W. Martin recovered a judgment in the Pulaski circuit court against said Benjamin. Execution was issued on that judgment in March, 1875, this property levied on and sold to plaintiff. On June 7, 1872, the congress of the United States passed an act as follows:

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that the secretary of the treasury be, and he is hereby, authorized and directed to purchase a site for, and cause to be constructed, a suitable building, with a fire-proof vault extending to each story, at the city of Little Rock, in the state of Arkansas, for the accommodation of the United States circuit and district courts, post-office, internal revenue, and other government offices, and for this purpose there is hereby appropriated out of any money in the treasury not otherwise appropriated the sum of one hundred thousand dollars, to be expended under the direction of the secretary of the treasury, who shall cause proper plans and estimates to be made, so that no expenditure shall be made or authorized for the full completion of said building and payment for the site thereof beyond the amount herein appropriated: provided, that no part of the sum herein appropriated shall be used or expended until a valid title to the site of said building shall be vested in the United States, and until the state of Arkansas shall duly release and relinquish its jurisdiction over the same, and its right to tax said site, and the property which may be thereon, during the time the United States shall be or remain the owner thereof. Approved June 7, 1872."

The legislature of Arkansas, on the 21st day of February, 1873, passed the following act, to-wit:

"The state of Arkansas hereby consents to the purchase by the United States of a site for public buildings, * * * and hereby cedes and grants

jurisdiction to the United States over any lot or lots, parcel, or block of ground within the corporate limits of the city of Little Rock, not exceeding in area three hundred (300) feet square, which shall or may be purchased by the United States as a site for a building for the accommodation of the United States circuit and district courts, post-office, internal revenue, and other government offices, under the act of congress approved June 7, 1872; and the said state hereby releases and relinquishes her right to tax said site, and all improvements which may be thereon, during the time the United States shall be and remain the owner thereof: provided, that this grant of jurisdiction shall not prevent the execution of any process of this state, civil or criminal, on any person who may be on said premises."

The effect of these two acts was to vest exclusive jurisdiction over this tract of ground in the United States government, and this by virtue of section 8, art. 1, of the United States constitution. Now, at the time the cession of jurisdiction became operative and final, to-wit, on May 15, 1874, the government received a good title, as well as exclusive jurisdiction. True, the property was subject to a judgment lien, and, if the property had remained in the territorial jurisdiction of the state of Arkansas, this judgment lien might have ripened, through proceedings in the state courts, into a perfect title; but after the cession of jurisdiction the power of the Arkansas state courts over the property ceased. No process could issue out of any state court to disturb the title or affect the property. I do not mean to say that the cession of jurisdiction would destroy the lien, but it did compel the enforcement of any rights which the judgment creditor had by proceedings in the federal courts. The reservation as to service of process is as expressed to process which is purely personal, and therefore, *ex vi termini*, excludes process, mesne or final, touching property, real or personal. This seems to be the general *consensus* of opinion, as expressed in the various cases cited by the learned district attorney in his brief. The most authoritative case cited by him is that of Railroad Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. Rep. 995, from which I make this quotation:

"When the title is acquired by purchase, by consent of the legislatures of the states, the federal jurisdiction is exclusive of all state authority. This follows from the declaration of the constitution that congress shall have ' like authority ' over such places as it has over the district which is the seat of government; that is, the power of ' exclusive legislation in all cases whatsoever.' Broader or clearer language could not be used to exclude all other authority than that of congress; and that no other authority can be exercised over them has been the uniform opinion of federal and state tribunals, and of the attorneys general. The reservation which has usually accompanied the consent of the states that civil and criminal process of the state courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them, but is admitted to prevent them from becoming an asylum for fugitives from justice; and congress, by statute passed in 1795, declared that cessions from the states of the jurisdiction of places where light-houses, beacons, buoys, or public piers were or might be erected, with such reservations, should be deemed sufficient for the support and erection of such structures, and, if no such reservation had been made, or in future cessions for those purposes should be omitted, civil and criminal process, issued under the authority of the state or of the United States, might be served and executed within them. 1 St. 426, c. 40."

Several other cases are noticed by the court in subsequent portions of the opinion. In view of the decision of the supreme court in that case, further discussion by me would seem superfluous. The exceptions will be sustained.