ALEXANDER S. MASON, PROSECUTOR, v. THE TOWNSHIP OF CRANBURY, IN THE COUNTY OF MIDDLESEX, ET AL.

Argued February 19, 1902—Decided June 9, 1902.

1. Under the revised act concerning townships (*Pamph. L.* 1899, *p.* 372), the power conferred upon the township committee by section 67 to contract with any person or private corporation for a supply of light for public use in the township, is not limited either by section 72 or by section 27 of the act so as to require a previous vote of the people making an appropriation or authorizing a tax to be raised or bonds to be issued to pay the cost of such lighting.

2. Under the revised act concerning townships (*Pamph. L.* 1899, *p.* 372), the authority conferred upon the township committee by section 31 to apply unexpended and unappropriated moneys of the township to any purpose for which township money may be lawfully expended, is not to be so construed as to limit the township committee to those objects of expenditure for which moneys have been ordered raised by vote of the people.

3. Under section 67 of the revised act concerning townships (*Pamph. L.* 1899, *p.* 372), the township committee may make a contract for the lighting of the streets for a term of one year, to commence within a reasonable time in the future; and this may be done without publishing notice of intention and inviting remonstrances from property owners, as is required by section 68 to be done before the making of a lighting contract for a longer term than one year.

4. The official copy of an act of the legislature, on file in the office of the secretary of state, is conclusive proof of the enactment and its contents. As its function is to demonstrate what the legislative department has enacted into law, every part of the document is evidential for that purpose, and for all purposes incidental to an inquiry into the legislative meaning.

5. While extraneous evidence cannot be admitted to show that an enrolled statute was not passed, or that it was passed in a different form, or to show the course of legislation through which the bill passed, or that it was subjected to amendment after introduction and before passage, or to show what the amendments were, yet where the original document, as deposited by the legislative department among the archives of the state, shows upon its face that the bill was amended in the course of legislation, and shows what amendments were made, the judiciary may take into consideration the purpose and effect of such amendments in coming to a conclusion as to the proper construction to be given to clauses of doubtful meaning, and clauses inconsistent one with another, in the act as finally adopted into the law.

6. The official copy of the revised act concerning townships (*Pamph. L.* 1899, *p.* 372), as found on file in the office of the secretary of state, shows upon its face that it was introduced as a legislative bill in the senate, referred to a committee and afterwards printed; that thereafter, and before its final passage, it was subjected to numerous amendments, all of which were made with pen and ink upon the face of the printed bill in such manner as to leave the old matter legible, though canceled. *Held*, that these amendments may be considered in construing a doubtful provision of the law as finally passed.

On *certiorari*.

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutor, *William M. Lanning*.

For the defendants, *R. M. J. Smith*.

The opinion of the court was delivered by

PITNEY, J. On January 11th, 1902, the township committee of Cranbury township, in the county of Middlesex, passed an ordinance authorizing the Hopewell Electric Light, Heat and Power Company to erect poles and wires and other electrical appliances in the public roads and streets of the township, upon obtaining consents of abutting property owners. The ordinance allows to the company one year from its passage within which to complete the plant and put it in operation, on failure of which the provisions of the ordinance are to be void. On the same day the committee adopted a resolution appropriating $600 for lighting the streets and then executed a contract with the above-mentioned company providing for the furnishing of street lights for the term of one year from the installation of the lighting system, for which the committee, in behalf of the township, agreed to pay to the company $600 in monthly payments of $50 each, during said term.

The prosecutor, a resident and owner of real estate in the township, asks that this contract be set aside as void, for the following reasons, viz.:

1. Because the township committee has no power to contract for the expenditure of moneys for public lighting, since no money has been voted by the people of the township for that purpose.

2. Because there has been no legal appropriation of any unexpended balance or other public moneys for lighting purposes.

3. Because the contract extends over a period of more than one year.

The disposition of these objections turns upon the powers of the township committee as conferred by "An act concerning townships" [Revision]. *Pamph. L.* 1899, *p.* 372. Section 67 of that act, in terms, gives to the committee the power to provide for the public lighting, and for that purpose to make a contract with any person or private corporation for a supply of light. It is insisted, however, that this power is very seriously limited, expressly or impliedly, by other portions of the act. In order to properly deal with the questions raised, a somewhat extended recital becomes necessary.

The earlier sections of the act provide for the incorporation of the inhabitants of the several townships, establish the 1st of February as the commencement of the fiscal year, provide for the annual township election to be held on the second Tuesday of March, and designate the officers then to be chosen, including members of the township committee, the assessor of taxes, the collector of taxes, &c.

Section 27 relates to the authorization of taxes by vote of the people. It follows the general lines of section 11 of the Township act of 1846 (*Gen. Stat., p.* 3583), but includes the specific mention of a large number of objects of expenditure in addition to those that were included in the former act; and it does not contain the express direction that the moneys voted shall be raised by tax; this provision being now found in section 30. The language of section 27 is as follows: "The persons qualified to vote are empowered, at any annual township election and at any other election duly held for the purpose, to vote, grant or raise such sum or sums of money as may be deemed necessary for the maintenance and support of the poor" [here follows a specific mention of the objects of

expenditure, including "the lighting of the streets, public places and public buildings in the township, * * * and the maintenance and operation of the township government and the payment of the incidental expenses thereof"], "and for such other objects, purposes or charges as may be authorized by law; a majority of all votes cast shall be required to determine an amount of money to be voted, granted or raised, but in case of a tie vote for different amounts of money for the same object, the smaller sum shall be considered the amount voted, granted or raised."

Section 28 authorizes the township committee, by resolution, to order money raised by tax for the payment of any judgment against the township, or any moneys falling due upon any township bond, payable before the next annual township election, for which no appropriation shall have been made by the voters.

Section 29 limits the amount to be appropriated and ordered to be raised by taxation in the township in any one year, exclusive, however, of state, county and school taxes.

Section 30 provides for the assessment and collection of the moneys voted, granted or ordered to be raised, with certain fines and penalties, which, when recovered, are to be paid to the township treasurer and applied to the use of the township in such manner as shall be directed by the township committee.

Section 31 is as follows: "Whenever any money comes into the hands of the township treasurer from license fees, arrears of taxes or any source other than the assessment, levy and collection of taxes for the current year, not herein or otherwise applied to any object or purpose, it may at any time be applied by the township committee to any purpose for which township money may be lawfully expended; and whenever, after the close of the fiscal year, any unexpended balance of such money or of any money raised by taxation in the township during the fiscal year remains in the hands of the treasurer, such money may be applied in the same manner."

Sections 32 to 35 prescribe the general powers of the township committee, which include the regulation by ordinance of the streets and highways and other public places.

Sections 36 to 72, inclusive, contain elaborate provisions granting and regulating the powers of the township committee over the construction, paving and repairing of sidewalks and gutters, the establishment and maintenance of a fire department, a police department, a sewerage system, &c. In view of the insistments made by the prosecutor in the present case, the terms in which these several powers are conferred become significant.

Section 36 commences as follows: "The township committee shall have power by ordinance to provide for the construction, &c., of the sidewalks or gutters, &c., at the cost and expense of the owner of abutting lands." Succeeding sections regulate the mode of procedure.

Section 51 reads, in substance, as follows: "When the legal voters of the township shall have voted, granted or raised money for the establishment and maintenance of a fire department, the township committee shall, by ordinance, establish such fire department," &c.

Section 52 reads: "Whenever a fire department shall have been established or money shall have been voted or granted for the prevention of the destruction of property by fire, the township committee may contract," &c.

Section 54 reads: "In any township where any sum of money shall be raised to defray the expenses of fighting and extinguishing forest fires, it shall be the duty of the township committee to appoint a fire marshal," &c.

Section 57 reads: "When the legal voters of the township shall have voted, granted or raised money for the establishment and maintenance of a police department, the township committee shall by ordinance establish such police department," &c.

Section 60 reads: "Whenever money shall have been voted for the purchase or construction of a sewer or sewers, or system of sewerage, it shall be lawful for the township committee to purchase, construct," &c.

Section 61 reads: "Whenever money shall have been voted for the purchase or construction of sewage-disposal works it shall be lawful for the township committee," &c.

Section 65 commences: "The township committee shall have power to provide and obtain by contract with any individual or private or public corporation a good and sufficient supply of water," &c.

Section 67 reads as follows: "The township committee shall have the power to provide for lighting the streets and public places of the township, and for that purpose may contract with any person or private corporation for a supply of light for public use in said township."

Section 68, which follows the sub-title "Provisions applicable to sewerage, water-supply and lighting," provides that "before any contract for a supply of light for public use or of water for public or private use in the township for a longer term than one year shall be made by the township committee, the said committee shall adopt a resolution declaring their intention to so contract, which shall state the term of years of the proposed contract and the rate or price to be paid for the supply of water or light." The section then proceeds to require publication of the resolution for two weeks, with notice of the time within which remonstrances against the making of the contract may be filed, and provides that if a remonstrance against the making of such contract, signed by the owners of more than one-half in value of the taxable property in the township, shall be filed, the township committee shall have no power to make the contract or to institute, within one year thereafter any similar proceedings for the making of a contract for a longer term than one year; if no such remonstrance be filed the township committee may make such contract.

Section 72 reads as follows: "No power given to the township committee to make any public improvement or purchase any plant or property for the use and benefit of the township, or enter into any contract therefor, shall be exercised unless an appropriation has been voted or authority given for the issue of bonds to pay the cost thereof; *provided, however,* that this section shall not prevent the issue of bonds or the incurring of obligations for the payment of the cost of constructing, curbing, recurbing, paving or relaying any sidewalk, or the making of any contract for the supply of water for public·

or private use for a term not exceeding one year, where, in the opinion of the township committee, the income received from the users or consumers of water, together with the sums voted therefor, will equal or exceed the indebtedness incurred under such contract, or the making of a contract for any supply of light for public use or of water for public or private use for a longer term than one year, against the making of which no remonstrances shall have been filed as in this act provided."

The prosecutor's first insistment is that the power of the township committee to contract for public lighting, as conferred by section 67, is within the prohibition of section 72, so far as contracts for any term not longer than one year are concerned; and that therefore lighting contracts for a year or less cannot be made without a previous vote of the people.

In examining the context, it will be at once remarked that there is a sharp contrast between the terms employed in sections 51, 52, 54, 57, 60 and 61, on the one hand, in each of which the grant of power is expressly conditioned upon a previous vote of the people, and the terms employed, on the other hand, in section 67, which is free from that condition. This is a strong indication that the power of the committee, with respect to lighting, was intended to be untrammeled in this respect. This view is strengthened by what is contained in section 68 in the way of restrictions imposed upon the exercise of the power to make a contract for public lighting for a longer term than one year. The inference from this section is that the publication of notice of intended action by the township committee, and the reception of remonstrances from the taxpayers, were intended as a substitute for the method of submission to the vote of the people.

But then comes section 72. As will be observed, so much of the latter section as precedes the proviso is prohibitory, while the proviso, in terms, limits the effect and operation of the prohibition. If the former part stood alone, viz.: "No power given to the township committee to make any public improvement or purchase any plant or property for the use and benefit of the township, or enter into any contract therefor, shall be exercised unless an appropriation has been voted or authority given for the issue of bonds to pay the cost

thereof," it would hardly be suspected that this prohibition was intended to apply to a contract for street lighting. The words "any. contract therefor," of course, have relation to contracts for "making any public improvement," or contracts for the "purchase of any plant or property." Leaving out the proviso, it would seem plain that the language had reference to public improvements of a permanent character (*Trenton* v. *Shaw,* 20 *Vroom* 638), such as the construction, curbing and paving of sidewalks or gutters (section 36); the building of fire cisterns (section 52); the purchase or construction of sewers and drains (section 60); or of sewage-disposal works (section 61); or the purchase or construction of a plant for water distribution (section 65). It is true that each of the several sections authorizing the construction or purchase of such public improvements or plants, contains its own prohibition upon the exercise of that power without a previous vote of authorization. The explanation of this would be that section 72 was inserted from abundant caution.

Next comes the proviso of section 72. As printed and punctuated, the effect of it is that *"this section shall not prevent"* either of three things, viz.:

(*a*) The issuing of bonds or incurring of obligations for paying the cost of constructing, curbing or paving any sidewalk. (The explanation of this is that by sections 36 to 50 this cost is ultimately to be imposed upon the owners of the abutting property, so that the obligations incurred in behalf of the township would be of temporary duration.)

(*b*) The making of any contract for the supply of water for public or private use for a term not exceeding one year where, in the opinion of the township committee the income received from the users or consumers of water, together with the sums voted therefor,. will equal or exceed the indebtedness incurred under such contract. (This contemplates the reimbursing of the township treasury by water rates imposed on the lot owners under section 66.)

(*c*) The making of a contract for any supply of light for public use or of water for public or private use for a longer term than one year, against the making of which no remonstrance shall have been filed as in this act provided.

Assuming for the moment that the language of the proviso requires us to adopt for the words "public improvement," as used in the section, a meaning that will include a lighting contract such as the one now under review, we proceed to examine it in that aspect.

Adopting any possible construction of the proviso, it leaves little operative effect to the prohibition of the section. And if we read the third clause, as punctuated, annexing the qualifying phrase, "for a longer term," &c., to lighting contracts, as well as to water contracts, we have the absurd result that the prohibition of the section applies to short-term lighting contracts; hedging these about with a condition which, as we have seen, was deliberately omitted from section 67, a condition more onerous than that which is imposed upon long-term contracts by section 68.

In view of everything contained in the act, we think it much more reasonable to construe the third branch of this proviso as if there were a comma after the words "supply of light for public use," dividing the clause at that point and leaving lighting contracts unqualified by what follows. The result is that all lighting contracts are, by the proviso, excluded from the prohibition of the section. This construction is not free from difficulty, especially in view of the fact that section 68 uses the same phrase, with the same punctuation, in grouping together long-term lighting and water contracts for the purposes of that section. But these purposes are perhaps not the same as those of the proviso under consideration. In section 68 it is a remonstrance signed by the owners of more than one-half in value of the taxable property that is required to disable the township committee from making the proposed contract; while in the proviso of section 72 it requires, apparently, an entire absence of remonstrances in order to exempt long-term water contracts from the operation of the section.

But if there is doubt about the construction just adopted, at least it may be said with safety that the proviso, under the circumstances, ought not to be allowed any force or effect beyond its avowed purpose. That purpose is to limit the pro-

hibition of the very section; it can by no fair construction be deemed to enlarge that prohibition. As already remarked, if we had encountered section 72 without the proviso, it would not have been suspected that its prohibitive language was intended to apply to a contract providing for the lighting of the streets by a private corporation, and not calling for the construction of any public work or the purchase of any plant or property with the public funds.

On the whole, therefore, we conclude that the authority conferred upon the township committee by section 67 is not limited as to contracts for public lighting by anything in section 72 contained.

In order to test the accuracy of the above view, based upon the statute in question as found printed in the pamphlet laws, we have deemed it proper to inspect the official copy of the act on file in the office of the secretary of state. The act as published shows in its general features such abundant evidence of thorough and elaborate preparation by persons of learning, intelligence and skill, that the inapt and incongruous language of section 72 suggested strongly that something had occurred in the course of legislation to put that section out of harmony with its surroundings. An inspection of the official copy sufficiently explains the matter. The legislative bill which eventuated in this statute appears at some stage antedating its final passage to have been completely prepared in printed form, and afterwards to have been amended by erasures and interlineations made with pen and ink. These amendments are abundantly authenticated. The bill in that form, partly printed and partly written, was passed by both houses of the legislature, instead of being fairly engrossed before passage, according to the method then prevailing. In that form it received the executive signature and now remains among the archives of the state as the final and conclusive evidence of the enactment of the statute and of its contents.

The question arises, can we accept as evidence that which appears on the face of this original instrument, not merely for the purpose of determining the fact that the law was passed, and the date when passed, and its contents as finally

passed, but of going further and inquiring whether at some time anterior to its passage, and during its progress through the legislature, it was subjected to amendment? And if this be answered in the affirmative, is it proper for us to give weight to that fact and to consider the purpose and effect of such amendments in coming to a conclusion as to the proper construction to be given to doubtful clauses and clauses inconsistent one with another, in the act as finally adopted into the law? If, instead of amendment in the course of legislation, the doubt arose upon the effect of a partial repealer by subsequent enactment, there would be no doubt of the propriety of taking into consideration the portion repealed in construing the residue. This is an application of the rule *in pari materia*, of which many examples may be found in the adjudicated cases. *Attorney-General* v. *Lamplough*, L. R., 3 Ex. D. 214, 227; S. C., 47 L. J. Exch. 555; *Bank for Savings* v. *Collector*, 3 Wall, 495, 513; *Ex parte Crow Dog*, 109 U. S. 556, 561; *Flanders* v. *Town of Merrimack*, 48 Wis. 567, 576; *Sedgw. Stat. Con. (2d ed., with Pomeroy's notes)* 209, *note;* Endl. Interp. Stat., § 49; Suth. Stat. Con., § 162.

Upon full consideration we are satisfied that the original statute, in its official form, being evidence necessarily for the main purpose, is evidence for all incidental purposes. As its function is to demonstrate what the legislative department of the government has enacted, every part of the document is evidential for that purpose. If an erasure or interlineation will serve to throw any better light upon the legislative meaning we have no right to close our eyes to that light. It is not inconceivable that the legislature may have chosen to leave its finished work in this particular form in order that all concerned might know not only what was finally enacted, but something of the course of legislation prior to its enactment. Whether anything thus revealed about the formative process is of greater or less significance upon the question of construction is to be determined by the judicial department.

This view is entirely consonant with the doctrine established by this court in *Pangborn* v. *Young*, 3 *Vroom* 29, and approved by the Court of Errors and Appeals in *Freeholders*

of *Passaic* v. *Stevenson*, 17 *Id.* 173, 184, and *Standard Underground Cable Co.* v. *Attorney-General*, 1 *Dick. Ch. Rep.* 270, 276, the latter case being an appeal from a decision of Vice Chancellor Bird reported, *sub nom. State* v. *Underground Cable Co.*, 18 *Atl. Rep.* 591. The doctrine thus established is that the enrolled statute is conclusive proof of the enactment and its contents, so that the files and journals of the two houses of the legislature cannot be resorted to in order to show either that the act was not passed or that it was passed in another form, or to show the course of legislation through which the bill passed, or the order in which amendments were introduced, or the form of words used in the amendments. The reason is that any such inquiry detracts from the conclusiveness of proof ascribed to the duly-authenticated statute. But it is obvious that this reason wholly fails when the authenticated statute alone is resorted to for evidence upon the suggested line of inquiry. In *Howard Savings Institution* v. *Newark*, 34 *Vroom* 547, 551, the Court of Errors and Appeals permitted an examination of the original acts on file for the purpose of determining whether certain statutes were correctly printed in the pamphlet laws with respect to punctuation.

Upon examining, therefore, the official copy of the act now under consideration, we learn from what appears upon its face that it was introduced as a legislative bill in the senate, referred to a committee, and thereafter printed; that later it was subjected to numerous amendments, some of which have a material bearing upon the construction of section 72; that all of the amendments were made with pen and ink upon the face of the printed bill, erasures or cancellations being accomplished by drawing a line with writing ink through the printed words, leaving the old matter still legible, though canceled; and new matter being inserted in the form of written interlineations. The following changes thus resulting should be noticed:

Section 65, as the bill originally stood, authorized the township committee to provide and maintain a good and sufficient supply of water for public or private use in the township, and

to purchase or construct a complete system of municipal water works. By amendment, practically the entire section was struck out and the present section 65 was substituted, which confers upon the committee the power to provide and obtain a supply of water by contract with any individual or private or public corporation, with the right to acquire or construct a plant for purposes of distribution only.

Section 67 of the bill as originally printed was as follows:

"The township committee shall have the power to provide for lighting the streets and public places of the township and to furnish a sufficient supply of light for public or private use in said township, and for that purpose may place on, over or under the streets and highways of the township all poles, wires, subways, conduits, gas mains and pipes and other appliances which the township committee shall in their discretion deem proper; they may construct or purchase a plant, works, machines and appliances for supplying such light or may contract with any person or public or private corporation for a supply of light for public or private use in said township."

By the amendment, resulting in the section as it now stands, all provision for municipal ownership of the lighting plant was struck out and the authorization was limited to the making of a contract for a supply of light for public use.

Neither section 65 nor section 67, as introduced, contained in itself any requirement that a vote of the people should be taken before constructing or purchasing a municipal water works or lighting plant. This matter, however, was provided by a subsequent section, which corresponds with the present section 72. As originally printed, the prohibitory portion of the section, and the first clause of the proviso, were precisely as they now stand in the statute.

Those portions of the proviso referring to water and light underwent some amendment, as appears by the following quotation, in which the words struck out are placed within parentheses, and the new words inserted are represented in italics, viz.: "Or the making of any contract for the supply

of water (or light) for public or private use for a term not exceeding one year, where, in the opinion of the township committee, the income received from the users or consumers of water (or light), together with the sums voted therefor, will equal or exceed the indebtedness incurred under such contract, or the making of a contract for any supply of (water or light) *light for public use or of water* for public or private use for a longer term than one year, against the making of which no remonstrances shall have been filed as in this act provided."

It is shown, therefore, to a demonstration, that in the bill as introduced, section 72 was intended principally to prevent the construction or purchase of a municipal lighting plant or water works without submission to popular vote. The purpose of the amendments made to the proviso was to exempt lighting contracts (irrespective of the term of duration) from the operation of the section, because of the amendment of section 67, the result of which was to remove lighting contracts entirely from the category of "public improvement" or the "purchase of plant or property." In thus amending the proviso, the following plan was adopted: (*a*) to strike out the words "or light" in two places, where reference was had to short-term contracts, and this for the reason that under the new arrangement, lighting contracts (unlike water contracts) were not to yield any income from private consumers; (*b*) in the latter part of the proviso, to strike out the words "water or light" and insert instead the words "light for public use or of water," in order to place the word "light" at a greater distance from the qualifying clause, "for a longer term than one year," &c. The purpose was to disassociate lighting contracts from water contracts in both branches of the proviso, so as to give the benefit of the proviso to all lighting contracts, irrespective of term of duration, income from consumers or the existence of remonstrances. The purpose would have been somewhat more clearly shown had a comma been inserted after the words "light for public use," in the latter amendment. But as this amendment is interlined with pen upon the printed page, the occasion for the use of a comma

is not so manifest as it would have been if the amended section had been reprinted.

And so, upon inspection of the enrolled statute, our opinion is confirmed that nothing in section 72 places any limitation upon the power conferred by section 67.

It is next insisted that the provisions of section 67 must be read in connection with the provisions of section 27 and 31, the former of which empowers the voters to order money to be raised by tax, and the latter of which authorizes moneys otherwise unappropriated to be applied by the township committee "to any purpose for which township money may be lawfully expended," and permits of the disposition of unexpended balances remaining at the end of the fiscal year in like manner. The argument is that no public purpose other than such as is specified by the voters of the township as an object of appropriation, and for which an appropriation is by them authorized, can be deemed a legal object of expenditure. But this construction of section 27 is quite inadmissible. That section itself recognizes that in addition to the specific objects mentioned in it there are "other objects, purposes and charges authorized by law." And it may be asked, if the effect of section 27 was to prohibit expenditures of public moneys for any other objects than those authorized by vote of the people, what necessity existed for the particular restrictions contained in sections 51, 54, 57, 60, 61 and 72, of which mention is made above?

The main purpose of section 27 is, in connection with section 30, to authorize moneys to be raised by tax. But such taxes are not the sole sources of revenue. Section 31 specifies other sources, and at the same time authorizes the transfer of unexpended and unappropriated moneys, however derived, to the account of any public object for which money may be lawfully expended.

But it is urged that there has been no legal appropriation of any unexpended balance or other public moneys for lighting purposes by the township committee of Cranbury township, and so the contract cannot be sustained. The case shows that at the same meeting which authorized the contract an ap-

propriation of $600 was made for lighting purposes. Therefore the present objection has no force, unless it is made to appear that this resolution was ineffective because there was no unexpended balance or other public money in hand upon which it could take effect. The real point of the objection seems to be that the contract under review constitutes an obligation in excess of the appropriation and limit of expenditure provided by law, and is thus rendered void by section 31 of the Crimes act. *Pamph. L.* 1898, *p.* 803; *State* v. *Halsted,* 10 *Vroom* 402; *Halsted* v. *State,* 12 *Id.* 552, 585; *Siedler* v. *Freeholders of Hudson,* 10 *Id.* 632; *Mabon* v. *Halsted,* 10 *Id.* 640, 645; *Atlantic City Water Works Co.* v. *Read,* 20 *Id.* 588; *S. C.,* 21 *Id.* 665; *Humphries* v. *Bayonne,* 26 *Id.* 241; *Crampton* v. *Zabriskie,* 101 *U. S.* 601.

Under the circumstances the burden of proof was upon the prosecutor to show that there was no money in hand upon which the appropriation could take effect. This burden he has not sustained. The uncontradicted evidence of the chairman of the township committee is that at the time of the making of the contract there was at least $600 in the hands of the treasurer as an unexpended balance. The witness states that the amount of this balance was "in the neighborhood of $1,400, possibly $1,700." The report of the financial condition of the township for the fiscal year ending February 13th, 1901, is in evidence, and shows on that date an unexpended balance in the treasurer's hands amounting to $1,460. It is argued by the prosecutor that subsequent expenditures must have exhausted this balance. It is sufficient to say that in our judgment there is nothing in the case sufficient to overthrow the statement of the witness just mentioned.

The final objection is that the contract extends over a period of more than one year. As section 68 requires certain preliminaries in the case of a contract for a longer term than one year, which preliminaries, admittedly, have not been complied with in the present instance, it is obvious that the objection, if well founded in fact, is fatal. In our judgment it is not well founded. The contract is to continue, so far as

the supply of light is concerned, for the space of one full year from the time the lighting system shall be installed. It is true that the lighting system had not been installed at the time of the making of the contract, but, in our opinion, section 68 is not to be so construed as to prevent the making of a one-year contract to commence in the future. The language of the section is quite different from that of section 5 of the statute of frauds, referring to an agreement that is not to be performed within one year from the making thereof. If the township committee had set the commencement of the one-year term so far in the future as to unnecessarily tie up the public moneys and thereby impose an undue burden upon the taxpayers, the resolution might be void for unreasonableness, but in the present instance they have taken the precaution to stipulate in the ordinance, from which alone the lighting company obtains its local privileges, that unless the plant is fully installed within one year the powers of the company shall cease. This is sufficient for all practical purposes. The contract in this respect seems an entirely prudent one, and as it is technically without fault, the objection must fail.

The writ of *certiorari* should be dismissed, with costs.