## UNITED STATES v. ANDEM.

(District Court, D. New Jersey. January 17, 1908.)

1. COURTS—FEDERAL COURTS—FOLLOWING DECISIONS OF STATE COURTS.

The rule established by decision of the courts of New Jersey that an engrossed act of the Legislature duly approved, signed, and filed is conclusive evidence of its contents, and cannot be contradicted by any evidence whatever, is one relating to the construction of the state statutes and is binding on the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 957.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. FORGERY—SUBJECTS OF FORGERY—"CHARACTER"—CORPORATE SEAL.

The seal of a corporation is a "character" within the meaning of section 197 of the New Jersey crimes act (P. L. 1898, p. 848), and the forgery of such seal with intent to injure any person or corporation constitutes a crime thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 18.]

3. INDICTMENT—DEMURRER—GROUNDS.

Under the practice of the federal courts, the defense of limitation cannot be raised by demurrer to an indictment.

4. CRIMINAL LAW—LIMITATION OF PROSECUTION—FEDERAL STATUTE—ADOPTION OF STATE LAW.

Act July 7, 1898, c. 576, § 2, 30 Stat. 717 [U. S. Comp. St. 1901, p. 3652], providing that when any offense is committed in any place, jurisdiction over which has been retained by, or ceded to, the United States the punishment for which is not provided for by any law of the United States, the offender shall receive the same punishment as the laws of the state provide for the like offense, does not incorporate into the federal law the general statute of limitations of the state relating to crimes, but a prosecution thereunder is governed as to limitation by the federal statute.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

5. SAME—FEDERAL JURISDICTION—CRIME COMMITTED IN POST OFFICE BUILDING.

Under such statute a federal court has jurisdiction to prosecute and punish for a crime denounced by the state law committed in a post office building owned and occupied by the United States within a state over which legislative jurisdiction has been ceded by the state.

[Ed. Note.—Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

6. FORGERY—INDICTMENT—SUFFICIENCY.

An indictment under section 197 of the New Jersey crimes act (P. L. 1898, p. 848), making it an offense to forge any instrument, etc., or any character, with intent to injure any person or corporation, which charges the forgery of a character meant to represent the seal of a corporation with intent to injure the corporation, is not insufficient because it fails to allege facts showing in what manner the corporation could have been injured thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 78.]

On Demurrer to Indictment.

John B. Vreeland, U. S. Dist. Atty.
J. Merritt Lane, for defendant.

LANNING, District Judge. The indictment charges that the defendant, James L. Andem, "on the nineteenth day of May, in the year one thousand nine hundred and five, at Trenton, in said (this) district, in the office of the clerk of the Circuit Court of the United States in and for said district, in the United States government building erected on lands ceded by the state of New Jersey to the United States of America, and over which the United States has jurisdiction, and within the jurisdiction of this court, feloniously did forge and counterfeit a certain 'character' meant to represent the seal of the New England Phonograph Company, a corporation duly organized and existing under and by virtue of the laws of the state of Maine, which said 'character,' so meant to represent the corporate seal of the said company, was affixed to a bill of complaint purporting to be filed in said United States Circuit Court by said New England Phonograph Company, complainant, against Thomas A. Edison and others, defendants, on the day and year last aforesaid." The indictment then sets forth a copy of the alleged bill of complaint, which appears to have a seal annexed thereto, to be signed by the president of the New England Phonograph Company, and to be attested by the defendant as secretary. The indictment also charges that the defendant committed the alleged forgery "with intent to prejudice, injure and damage the said New England Phonograph Company, he, the said James L. Andem, at the time he so forged and counterfeited the said false, forged and counterfeited 'character,' then and there well knowing the same to be false, forged and counterfeited against the statute of New Jersey in such case made and provided, to wit, section 197 of the Crimes Act, P. L. 1898, p. 848 (which, by force of section 5391 of the Revised Statutes of the United States, and the act of July 7, 1898, c. 576, 30 Stat. 717, volume 3 of the United States Compiled Statutes, page 3652, section 2, is made an offense), contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States." There is also a second count for uttering and publishing the alleged "character," and a third count for procuring the forgery of the "character."

Section 2 of the Congressional Act of July 7, 1898, c. 576, 30 Stat. 717 [U. S. Comp. St. 1901, p. 3652], is as follows:

"That when any offense is committed in any place, jurisdiction over which has been retained by the United States or ceded to it by a state, or which has been purchased with the consent of a state for the erection of a fort, magazine, arsenal, dock-yard or other needful building or structure, the punishment for which offense is not provided for by any law of the United States, the person committing such offense shall, upon conviction in a Circuit or District Court of the United States for the district in which the offense was committed, be liable to and receive the same punishment as the laws of the state in which such place is situated now provide for the like offense when committed within the jurisdiction of such state, and the said courts are hereby vested with jurisdiction for such purpose; and no subsequent repeal of any such state law shall affect any such prosecution."

It was admitted on the argument that there is no provision in any congressional act prescribing a punishment for the alleged offense. The indictment therefore rests upon the theory that the section of the congressional act above quoted incorporates the provisions of section 197 of the crimes act of the state of New Jersey. That section (P. L. 1898, p. 848) is as follows:

"Any person who shall falsely make, alter, forge or counterfeit, or cause, counsel, hire, command or procure to be falsely made, altered, forged or counterfeited, or willingly act or assist in the false making, altering, forging or counterfeiting, any record or other authentic matter of a public nature, character, letters-patent, deed, lease, writing sealed, will, testament, annuity, bond, bill, writing obligatory, bank bill or note, United States treasury note, check, draft, bill of exchange, promissory note for the payment of money, indorsement or assignment of any check, draft, bill of exchange, or promissory note for the payment of money, or any acceptance of a bill of exchange, or the number (or) principal sum of any accountable receipt for any note, bill or other security for the payment of money, or any warrant, order or request for the payment of money, or delivery of goods or chattels of any kind, or any acquittance or receipt, either for money or goods, or any acquittance, release or discharge of any debt, account, action, suit, demand or other thing, real or personal, or any transfer or assurance of money, stock, goods, chattels or other property whatsoever, or any letter of attorney, or other power to receive money, or to receive or transfer stock or annuities, or to let, lease, sell, dispose of, alien or convey any goods or chattels, lands or tenements, or other estate, real and personal, with intent to prejudice, injure, damage or defraud any person or persons, body politic or corporate, or who shall utter or publish, or cause, counsel, hire, command or procure to be uttered or published, as true, any of the above false, altered, forged or counterfeited matters as above specified and described, knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, injure, damage or defraud any person or persons, body politic or corporate, shall be guilty of a high misdemeanor."

The defendant alleges 12 causes of demurrer. They may be embraced in these four points: First, that the seal of a corporation is not a thing the forging of which may be punished under section 197 of the New Jersey crimes act; second, that the alleged offense is barred by the statute of limitations; third, that this court has no jurisdiction of the alleged crime; and, fourth, that the indictment does not set forth any crime under section 197 of the New Jersey crimes act.

In considering the first question, it will be observed that the name "character," in the 197th section of the New Jersey crimes act, seems to be incongruously associated with the names of the other things the forgery of which is denounced. All the other names in the section, relate to written or printed instruments or papers. From 1796 to 1882 (see Patterson's Laws, 215, § 42; Revision of 1847, p. 271, § 48; and Revision of 1877, p. 257, § 173) the law prescribed a penalty for the forgery of any "charter." In 1882 (P. L. N. J. 1882, p. 95) the word "character" was substituted for the word "charter." The same substitution was carried into the Revision of 1898, as shown in section 197, above quoted. That the substitution of the word "character" for the word "charter" in 1882 was a clerical error on the part of some one is altogether probable. But I have examined the engrossed act of 1882, on file in the office of the Secretary of State of the state of New Jersey, and find that the word "character" is also there substituted for the word "charter." The rule of practice in the courts of the state of New Jersey does not permit an engrossed act of the Legislature,

duly passed, signed, approved, and filed, to be contradicted by any evidence whatever. It is conclusive evidence both of its existence and its contents. Pangborn v. Young, 32 N. J. Law, 29; Freeholders of Passaic v. Stevenson, 46 N. J. Law, 173, 184; Mason v. Cranbury, 68 N. J. Law, 149, 160, 52 Atl. 568; Standard Underground Cable Co. v. Attorney General, 46 N. J. Eq. 270, 276, 19 Atl. 733, 19 Am. St. Rep. 394. Such being the rule of the New Jersey state courts concerning the construction of the statutes of that state, it is binding upon the federal courts. Town of South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204. Besides, the same rule concerning the conclusiveness of an enrolled copy of a congressional act obtains in the federal courts. Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. 890, 40 L. Ed. 1069. The court cannot, in view of this rule, consider the word "character" as meaning "charter," and I think the seal of a corporation must be regarded as a "character" within the meaning of the law.

Second. Is the alleged offense barred by the statute of limitations? Although cases may be cited where such a defense has been supported on a demurrer, the weight of opinion is against that practice. For the federal courts at least, the practice is not permissible. It was decided in United States v. Cook, 17 Wall. 168, 21 L. Ed. 538, that the statute of limitations cannot be taken advantage of by demurrer. See, also, United States v. Brace (D. C.) 143 Fed. 703, and Greene v. United States (C. C. A.) 154 Fed. 401, 411. These cases show that the defendant may have the advantage of the statute of limitations at the trial, if he be entitled thereto. Inasmuch, however, as the question whether the statute of limitations furnishes a good defense in this case has been fully argued by counsel, it may not be inappropriate to make some further observations. The indictment alleges that the offense was committed May 19, 1905. The bill of indictment was returned at the September term, 1907. If the limitation of three years prescribed in section 1044 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 725] is applicable, it furnishes no defense for the reason that the indictment was found within that period; but if the limitation prescribed by the law of the state of New Jersey is applicable, the defendant may have a good defense, for that limitation (see New Jersey Criminal Procedure Act, P. L. 1898, p. 919, § 152) is as follows:

"No person or persons shall be prosecuted tried or punished for treason unless the indictment for the same shall be found within three years next after the treason shall be done or committed; nor shall any person be prosecuted, tried or punished for any offense, not punishable with death, unless the indictment shall be found within two years from the time of committing the offense or incurring the fine or forfeiture; provided * * * nothing herein contained shall extend to any person fleeing from justice."

This section, so far as it affects the question now under consideration, has long stood without change. The section of the federal statute, on which the indictment is founded, as already quoted, provides that if punishment "is not provided for by any law of the United States" the person committing the offense shall, on conviction, "be liable to and receive the same punishment as the laws of the state in

which such place is situated now provide for the like offense when committed within the jurisdiction of such state." The material question therefore is, what punishment could be imposed on the defendant under the laws of the state of New Jersey if a like offense had been committed within the jurisdiction of the state? The element of time has nothing to do with the nature of the offense, for, as was said by the Supreme Court in United States v. Cook, supra, "time is not of the essence of the offense." True, if the alleged offense had been committed within the jurisdiction of the state of New Jersey on May 19, 1905, and an indictment had been found in a state court against the defendant in September, 1907, the New Jersey limitation might furnish to the defendant a good defense. But, as time is not of the essence of the offense, as the limitation prescribed by the New Jersey law is in a different statute from that which defines the offense, and as the section of the congressional act above quoted provides that the punishment to be imposed shall be the same as that which may be imposed by the state of New Jersey for a like offense, it seems that the provision of the New Jersey state law which has been incorporated in the congressional act is not that part of the New Jersey criminal procedure law which provides that no person shall be punished for any offense, not punishable with death, unless the indictment be found within two years from the time of committing the offense, but that, so far as the present case is concerned, it incorporates only that part of section 197 of the New Jersey crimes act which defines the offense concerning the forgery of a "character." If this be the true construction of the federal statute, the case must be controlled by the provision concerning limitations contained in section 1044 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 725] and not by the provision of section 152 of the criminal procedure act of the state of New Jersey.

Third. Has this court jurisdiction of the alleged crime? The defendant insists that the post office building, in which it is charged the crime was committed, is not a "place" within the meaning of the section of the federal law on which the indictment is based. Clause 17 of section 8 of article 1 of the federal Constitution provides that the Congress shall have power "to exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may by cession of particular states and the acceptance of Congress become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be for the erection of forts, magazines, arsenals, dock-yards and other needful buildings." The argument is that as the post office building at Trenton is neither a fort, magazine, arsenal, or dock-yard, it cannot, by any proper application of the maxim "noscitur a sociis," be included in the words "other needful buildings." But in Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264, Mr. Justice Field, after declaring that a state is incompetent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign government without the concurrence of the general government, at page 541 of 114 U. S., page 1004 of 5 Sup. Ct. (29 L. Ed. 264) said:

"In their relation to the general government, the states of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the state, they are not those of a different country; and the two, the state and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the states, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals and other buildings for public uses are constructed within the states. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the states as would defeat or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the state would be desirable, we do not perceive any objection to its grant by the Legislature of the state. Such cession is really as much for the benefit of the state as it is for the benefit of the United States. It is necessarily temporary, to be exercised only so long as the places continue to be used for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, the jurisdiction reverts to the state."

And in Chicago & Pacific Railway Co. v. McGlinn, 114 U. S. 542, 5 Sup. Ct. 1005, 29 L. Ed. 270, Mr. Justice Field, referring to the case of Fort Leavenworth R. R. Co. v. Lowe, said, at page 545 of 114 U. S., page 1006 of 5 Sup. Ct. (29 L. Ed. 270):

"We there held that a building on a tract of land owned by the United States used as a fort, or for other public purposes of the federal government, is exempted, as an instrumentality of the government, from any such control or interference by the state as will defeat or embarrass its effective use for those purposes. But in order that the United States may possess exclusive legislative power over the tract, except as may be necessary to the use of the building thereon as such instrumentality, they must have acquired the tract by purchase, with the consent of the state. This is the only mode prescribed by the federal Constitution for their acquisition of exclusive legislative power over it. When such legislative power is acquired in any other way, as by an express act ceding it, its cession may be accompanied with any conditions not inconsistent with the effective use of the property for the public purposes intended. We also held that it is competent for the Legislature of a state to cede exclusive jurisdiction over places needed by the general government in the execution of its powers, the use of the places being, in fact, as much for the people of the state as for the people of the United States generally, and such jurisdiction necessarily ending when the places cease to be used for those purposes."

The same doctrine was reannounced in Benson v. United States, 146 U. S., at page 330, 13 Sup. Ct., at page 62 (36 L. Ed. 991); in Martin v. House (C. C.) 39 Fed. 694, in which case it was applied to lands purchased for a post office building; and in United States v. Tucker (D. C.) 122 Fed. 518, in which case it was applied to land on which a lock in Green river, Ky., was constructed.

Turning now to the case in hand, we find that by an act approved April 3, 1872, entitled "An act granting the consent of the state of New Jersey to the purchase by the United States of certain lands for the purpose of the erection of a government building at Trenton, New Jersey, and ceding jurisdiction over the same," the state of New Jersey declared, by the first section of the act, that the consent of the state was given to the purchase by the United States of the land on which the post office building in Trenton is situated, and that the United States should "have, hold, use, occupy and own the said land or lands when

purchased and exercise jurisdiction and control over the same and every part thereof, subject to the restrictions hereinafter mentioned." The second section is as follows:

"That the jurisdiction of the state of New Jersey in and over the said land or lands mentioned in the foregoing section, when purchased by the United States, shall be and the same hereby is ceded to the United States, but the jurisdiction hereby ceded shall continue no longer than the said United States shall own the said land or lands."

By the third section it was provided:

"That the said consent is given and the said jurisdiction ceded upon the express condition that the state of New Jersey shall retain concurrent jurisdiction with the United States in and over the said land or lands, so far as that all civil process in all cases and such criminal or other process as may issue under the laws or authority of the state of New Jersey against any person or persons charged with crimes or misdemeanors committed within said state may be executed therein in the same way and manner as if such consent had not been given or jurisdiction ceded, except so far as such process may affect the real or personal property of the United States."

By the fourth section it was provided that the jurisdiction ceded by the act should not vest in the United States until it should have acquired title to the lands by purchase or grant, and that it should continue only while the land or lands should remain the property of the United States, and that during such period the land should be and continue to be exonerated from all taxes, assessments, and other charges which might be levied or imposed under the authority of the state. The fifth section provided that "Any malicious, willful, reckless or voluntary injury to or mutilation of the grounds, buildings or appurtenances shall subject the offender or offenders to a fine of not less than twenty dollars, to which may be added, for an aggravated offense, imprisonment not exceeding six months in the county jail or workhouse, to be prosecuted before any court of competent jurisdiction." The sixth and last section provided that the act should take effect immediately. Laws 1872, p. 63, c. 489.

Applying to this act the doctrine of the cases above cited, it seems clear that the legislative and political jurisdiction of the United States over the land on which the post office at Trenton stands is exclusive, except that civil process in all cases and criminal process in the case of crimes or misdemeanors committed within the state may be executed on the post office property, and that the state shall have criminal jurisdiction in any case of malicious, willful, or reckless injury to or mutilation of the grounds or buildings. It is true that there may be difficulty in construing the words "other needful buildings" contained in clause 17, § 8, art. 1, of the Constitution, so as to include a post office building without departing from the usual rule in applying the maxim "noscitur a sociis" or "ejusdem generis." However that may be, the cases show, as we have seen, that the federal government may acquire exclusive legislative and political jurisdiction over buildings not used as forts, magazines, arsenals or dockyards, or for any other naval or military purpose. It is reasonable that it should be so. The security of the public records preserved in the post office building where the federal courts also carry on their business, and the conduct of the business of the federal government in that building, demand that

the building shall be under the protection and authority of the federal government, and where the state has voluntarily ceded to the federal government its jurisdiction, or any part of its jurisdiction over property purchased by the United States and used only for governmental purposes of the United States, there can be no valid constitutional objection thereto. The reservation by the state of the right to serve civil and criminal process issued out of the courts of the state does not interfere in any respect with the governmental functions of the United States. It simply prevents any one from using the property of the United States as a sanctuary in which he may escape from justice. Nor does the provision of the fifth section of the New Jersey act show any intention to withhold from the federal government general legislative and political jurisdiction over the post office building. It is competent for the state to reserve such authority over the property as it and the federal government may agree upon. By the first section of the act of April 3, 1872, the state not only consented to the purchase of the land by the United States, but also consented that the United States should "exercise jurisdiction and control over the same and every part thereof, subject to the restrictions" in the act thereafter mentioned. There are no restrictions mentioned in the subsequent parts of the act except the right to serve on the property civil and criminal process issuing out of the courts of the state, and the right to prosecute any one who shall injure or mutilate the grounds or buildings. The conclusion, therefore, is that this court has jurisdiction over the crime alleged in the indictment.

Fourth. It is further insisted by the defendant that the indictment does not set forth a crime under section 197 of the New Jersey crimes act. It is argued that it is impossible that the New England Phonograph Company could be prejudiced, injured, or damaged by the alleged forgery. It is said that neither the general practice in equity nor any rule of the Circuit Court of the United States for the district of New Jersey requires the seal of a corporation to be affixed to a bill of complaint filed by it. And this is true. The answer of a corporation should be under its seal, but it is not necessary that a bill of complaint filed by a corporation shall be under its seal. But, though this be the rule of practice, the charge of the indictment is that the defendant forged and counterfeited a certain character, meant to represent the seal of the New England Phonograph Company, which character was affixed to that company's bill of complaint, with intent to prejudice, injure, and damage that company. How the complainant in the cause could be prejudiced, injured, or damaged by forging the seal affixed to its bill of complaint, which purported to seek relief for the complainant only, the indictment does not disclose. The question raised, therefore, is whether the indictment is defective because it fails to aver any extrinsic circumstances tending to show how the complainant could be prejudiced, injured, or damaged by the alleged forgery. If there be a crime charged in the indictment, it consists of two elements, namely, forgery of the seal of the New England Phonograph Company, and intent to prejudice, injure, or damage that company. It is a general rule of law that a writing invalid on its face cannot be the subject of forgery, for the reason that

it has no legal tendency to effect a fraud. But in the present case the charge is that the seal of the corporation was forged. It is possible to counterfeit or forge a seal. It cannot therefore be said that this is a case in which it was necessary to aver extrinsic circumstances to show the pernicious character of the act charged to have been a forgery. Inasmuch as the seal of a corporation may be forged, the forgery may be with intent to injure the corporation. Whether, in the present case, that intent existed will be a question of proof on the trial of the case. "The means of effecting the criminal intent or the circumstances evincive of the design with which the act was done are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in an indictment." United States v. Simmons, 96 U. S. 364, 24 L. Ed. 819.

The conclusion reached is that the demurrer must be overruled, and the defendant required to plead to the indictment.